PER CURIAM:
Horacio Arroyo-Jaimes (“Arroyo”) appeals his 57-month sentence for illegal reentry into the United States, in violation of 8 U.S.C. § 1326(a), (b)(2). At issue on appeal is whether Arroyo’s right to due process was violated when the government proffered but did not offer any evidence, and the district court plainly considered as part of its sentencing calculus, that when Arroyo was arrested in April, 2012, he was found in a bedroom with more than 200 grams of methamphetamine and a digital scale. The charges resulting from the 2012 arrest, however, were dismissed. Arroyo claims his sentence was grounded in substantial measure on facts he disputed and the government never established. After thorough review, and having taken oral argument, we agree.[1] We, therefore, vacate Arroyo’s sentence and remand for resentencing.
I.
The relevant facts are these. Arroyo, a citizen of Mexico, illegally entered the United States in 1999. In February 2006, he entered a plea of guilty in Georgia state-court to three counts of trafficking in methamphetamine stemming from a 2005 arrest in suburban Atlanta. He was sentenced to 15 years’ imprisonment to be followed by 15 years of probation. Arroyo served approximately 6 years of his trafficking sentence before being released and removed from the United States on December 20, 2011.
Arroyo unlawfully reentered the United States approximately two months later, in February 2012. On April 10, 2012, he was again arrested, this time by Sandy Springs, Georgia police officers for trafficking in methamphetamine. The trafficking charge was nolle prossed on February 25, 2013, for reasons not appearing in the record. While Arroyo was in custody, he pleaded guilty in Georgia state court to charges of carrying a concealed weapon and discharging a gun near a public street stemming from a 2003 incident. He re- ' ceived a 180-day sentence on those counts. Arroyo also admitted to unlawfully reentering the United States prior to his 2012 arrest, and entered a non-negotiated plea of guilty to the instant offense.
A presentence investigation report (“PSI”) was prepared prior to Arroyo’s sentencing hearing. Pursuant to U.S.S.G. § 2L1.2(a), Arroyo’s base offense level was 8. He received a 16-level increase because he was previously removed after being convicted for a felony drug trafficking offense for which the sentence imposed exceeded 13 months, and a 3-level decrease for acceptance of responsibility. See id. § 2L1.2(b)(l)(A)(i); id. § 3El.l(a). As a result, his total offense level was 21. His criminal history category was IV because of 7 criminal history points resulting from his pleas of guilty on the weapons charges, his 2006 plea of guilty to trafficking in methamphetamine, and his probationary status at the time he unlawfully reentered the United States. See U.S.S.G. § 4Al.l(a)-(b), (d). A total offense level of 21 and a criminal history category of IV yielded a calculated Guidelines range of 57 to 71 months of imprisonment.
Notably, the PSI contained only a cursory description of Arroyo’s April 10, 2012 *845 arrest. The PSI simply stated that he was “arrested for trafficking in more than 200 grams of methamphetamine,” and that the charge was subsequently nolle prossed. Although Arroyo lodged a number of objections to the PSI, he did not object to the bare fact that he was arrested for trafficking in methamphetamine and that the charge was subsequently dismissed. The district court adopted the facts and the Guidelines calculation set forth in the PSI.
At the sentencing hearing, Arroyo requested a downward variance based on several factors, including the severe impact his 2006 methamphetamine conviction had on both'his offense level and criminal history category; the uncounseled nature of his pleas of guilty to the weapons charges; the fact that the average sentence nationwide for unlawful reentry was less than 57 months; and the time he spent in ICE custody prior to trial. The government opposed the variance but urged the district court to impose a sentence at the low end of the Guidelines range. In support of its argument, the government made factual allegations regarding Arroyo’s arrest that were not included in the PSI. Specifically, the government said that “less than four months” after his removal following his 2006 conviction for trafficking in methamphetamine, the “Sandy Springs Police Department arrested [Arroyo] when, they found him in a bedroom with two bags of methamphetamine, a separate container containing more than 200 grams of methamphetamine and a digital scale.” D.E. 26 at 19. Arroyo responded “that the arrest that did not result in a conviction should [not] be considered by th[e] Court in imposing a sentence,” because it is “a dangerous path to go down when one begins to treat arrests in the same manner as convictions.” D.E. 26 at 23. The government did not present any evidence supporting the contested facts surrounding Arroyo’s 2012 arrest.
The district court denied Arroyo’s request for a variance and imposed a Guidelines-range sentence of 57 months’ imprisonment. Among other things, the district court said:
I’m sentencing the Defendant at the low end of the guideline range based on the recommendation of the Government; and I’m denying the Defendant’s request for a non-guideline sentence because I believe that the Guidelines appropriately take into consideration the aggravating factors that exist in this case, specifically the nature of the Defendant’s prior conviction for trafficking in methamphetamine, the fact that the Defendant was then arrested within months of his release from imprisonment in the possession again of more than Z00 grams of methamphetamine and drug paraphernalia. And I think that a sentence at the low end of the guideline range is the least sentence that should be imposed under those circumstances .... [A]n argument can be made that the sentence should have been at the high end of the guideline range under those facts and circumstances ....
And I will also say for the record I don’t consider this an average case.... For a Defendant to be deported after a drug trafficking offense and then to illegally come back to the United States and be again arrested under circumstances indicating he is dealing in drugs is about as bad as it gets short of such a Defendant committing a crime of violence. So for all those reasons, I think the sentence, if anything, is too lenient; but it is what it is.
D.E. 26 at 26-27 (emphasis added).
After his sentence was imposed, but before the sentencing proceeding was com *846 pleted, Arroyo objected to the district court’s “consideration of [the 2012] arrest as though it were a conviction and proof that he engaged in the conduct,” stating “I don’t believe that the Court has a factual basis to make such a finding, let alone use that finding to justify the sentence imposed in this case.” D.E. 26 at 28 (emphasis added). The government offered nothing further in support of the facts underlying Arroyo’s 2012 methamphetamine charge. This timely appeal ensued.
II.
The principal issue is whether the district court violated Arroyo’s due process rights at sentencing by considering as facts the circumstances averred by the government surrounding the 2012 nolle prossed arrest — specifically, that Arroyo was found in a bedroom by the Sandy Springs police department with two bags of methamphetamine, a separate container containing more than 200 grams of methamphetamine and a digital scale. Reading Arroyo’s comments in concert, both before and after the imposition of his sentence, we are satisfied that Arroyo objected to the government’s assertion of, and the court’s reliance on, the underlying facts surrounding his April, 2012 arrest. See United States v. Maurice, 69 F.3d 1553, 1557 (11th Cir.1995) (per curiam) (finding no waiver “so long as the objection to be preserved and the grounds for the objection are clear to the sentencing court at the conclusion of the hearing”).
The suggestion has been made that Arroyo either failed to sufficiently dispute the facts asserted by the government, or that he failed to do so in a timely fashion. As for the first point, a defendant need not expressly state in his objection that a fact to be used at sentencing is “untrue” in order to place the burden on the government to produce evidence in support of that fact. See United States v. Rosales-Bruno, 676 F.3d 1017, 1023 (11th Cir.2012) (finding that the defendant “clearly objected” to statements in his PSI, placing “on the government the burden of proving [the disputed] facts,” where the defendant stated only that he “objects to paragraph 30 which contains the circumstances of the false imprisonment case” (quotation omitted)); see also United States v. Gallo-Chamorro, 48 F.3d 502, 507-08 (11th Cir.1995) (noting that “general objection[s]” or “objection[s] on other grounds will not suffice,” because they prevent the district court from “more fully developing]” the factual record). Here, Arroyo made a specific objection to the lack of a “factual basis” upon which the government’s proffer and the district court’s finding rested. His objection sufficiently captured the nature of his complaint, alerted the court to the lack of an evidential foundation, and, thus, placed upon the government the burden to produce evidence in support of its claims.
As for the second point, Arroyo’s objection was not untimely. More than twenty years ago this court exercised its supervisory power over district courts by requiring them to solicit objections following the imposition of a sentence because “new causes for objection, which the parties could not reasonably have anticipated, may arise during ... the imposition of sentence.” United States v. Jones, 899 F.2d 1097, 1102 (11th Cir.1990), overruled on other grounds by United States v. Morrill, 984 F.2d 1136 (11th Cir.1993) (en banc) (per curiam). We found it necessary to allow the parties, “after the court states its factual findings, applies the guidelines, and imposes sentence^] to object to the district court’s ultimate findings of fact and conclusions of law,” so that the court may “correct on the spot any error it may have made.” Id. (emphasis added). While de *847 fense counsel could have been clearer in stating the nature of the objection at the outset, we think it clear that, under Jones, and before the proceedings had concluded, she did timely object to the court relying on these contested factual averments as a basis for Arroyo’s sentence without any evidential foundation. We, therefore, review his due process claim de novo. United States v. Weeks, 711 F.3d 1255, 1259 (11th Cir.) (per curiam), cert. denied, — U.S. -, 134 S.Ct. 311, 187 L.Ed.2d 220 (2013).
To prevail on his claim, Arroyo must establish two things: (1) that the evidence he challenged at sentencing served as the basis for his sentence; and (2) that the evidence he challenged was materially false or unreliable. United States v. Ghertler, 605 F.3d 1256, 1269 (11th Cir.2010); United States v. Reme, 738 F.2d 1156, 1167 (11th Cir.1984). If this burden is met, “the proper remedy is a remand to the district court for a new sentencing hearing.” Id.
As for the first prong, the record is clear that the district court based Arroyo’s sentence. in real measure on its determination that Arroyo engaged in unlawful conduct related to his nolle prossed arrest. When it denied Arroyo’s requested variance and imposed his sentence, the district court justified its decision by highlighting the “aggravating faetor[ ]” that he was arrested months after his removal “in the possession again of more than 200 grams of methamphetamine and drug paraphernalia.” Moreover, the district court observed that for a defendant to unlawfully reenter the United States after his removal following a drug trafficking conviction and again be “arrested under circumstances indicating he is dealing in drugs is about as bad as it gets short of such a Defendant committing a crime of violence.” The district court was deeply troubled by the factual proffer — and not without good reason. After all, the prosecutor claimed that Arroyo was found in the possession of methamphetamine just months after being deported following his sentence for trafficking in that very same drug.. If the government had actually proven its claim, arguably it would demonstrate conduct that could heavily inform several of the § 3553(a) factors, including the need to “afford adequate deterrence to criminal conduct,” to “promote respect for the law, ... to provide just punishment for the offense,” and “to protect the public from further crimes of the defendant.” 18 U.S.C. § 3553(a)(2)(A)-(C). Plainly, the district court’s reliance upon the basic facts supporting Arroyo’s 2012 arrest fundamentally affected the calculus when it denied the application for a variance and fashioned his sentence.
That leaves only the question of whether the underlying facts and circumstances surrounding the 2012 arrest, as proffered by the prosecutor and considered by the court, were sufficiently reliable to support the district court’s determination that Arroyo actually possessed more than 200 grams of methamphetamine and paraphernalia. By now the law is abundantly clear that the government had the burden of establishing a reliable evidential foundation. See Ghertler, 605 F.3d at 1269 (a defendant has a due process right not to be sentenced based on unreliable information); United States v. Bennett, 472 F.3d 825, 832 (11th Cir.2006) (per curiam) (“Where a defendant objects to the factual basis of his sentence, the government has the burden of establishing the disputed fact.”); United States v. Rodriguez, 398 F.3d 1291, 1296 (11th Cir.2005), (stating that if a defendant objects to a fact “used in calculating his guideline sentence ... the government bears the.burden of establishing the disputed fact by a preponderance of the evidence”); United States v. *848 Liss, 265 F.3d 1220, 1230 (11th Cir.2001) (same); United States v. Patrick, 983 F.2d 206, 208 (11th Cir.1993) (“The burden of persuasion and production ... falls upon the government as a matter of due process to establish not only the elements of the offense as defined by the legislature but also each aggravating factor upon which a harsher sentence is to be based.”); United States v. Andrews, 953 F.2d 1312, 1319 (11th Cir.1992) (finding that due process requires relevant sentencing factors be proven by a preponderance).
Indeed, the preponderance burden applies when the sentence is enhanced. See United States v. Washington, 714 F.3d 1358, 1361 (11th Cir.2013) (“When the government seeks to apply an enhancement ... over a defendant’s factual objection, it has the burden ... [to] prove the necessary facts by a preponderance of the evidence.”). It applies when the sentence constitutes a departure from the Guidelines. See United States v. Stuart, 384 F.3d 1243, 1246 (11th Cir.2004) (per curiam) (noting that the party seeking a departure bears the burden of proof by a preponderance of the evidence). It also applies when the sentence constitutes a variance from the Guidelines. United States v. Overstreet, 713 F.3d 627, 633-38 (11th Cir.) (finding that an uncharged pri- or murder could be relied upon to support a variance because it was proven by a preponderance of the evidence), cert. denied, — U.S. -, 134 S.Ct. 229, 187 L.Ed.2d 171 (2013); see also United States v. Klups, 514 F.3d 532, 537 (6th Cir.2008) (same). And it applies when the sentence falls within the Guidelines range. See, e.g., United States v. Anderson, 444 Fed.Appx. 420, 420-21 (11th Cir.2011) (per curiam) (unpublished) (noting, for a within-Guidelines sentence, that “[w]hen a court relies upon a disputed fact as the basis for sentencing, the government must establish the fact by a preponderance of the evidence”); see also United States v. Castle, 596 Fed.Appx. 422, 426-27 (6th Cir.2015) (unpublished) (same).[2]
To borrow language from another court, “the same considerations of fairness and due process apply whenever a sentence is increased. It is the fact of the increase based upon inadequate evidence, not the mechanism by which the increase is accomplished that offends due process.” United States v. Berry, 553 F.3d 273, 284 (3d Cir.2009). And when a fact is disputed under the preponderance of the evidence standard — in any sentencing context — our law is clear that “absent a stipulation or agreement between the parties, an attorney’s factual assertions at a sentencing hearing do not constitute evidence that a district court can rely on.” Washington, 714 F.3d at 1361.
*849 Likewise, when a defendant seeks to benefit from a fact at sentencing, he also bears the burden of proof by a preponderance of the evidence. See, e.g., United States v. Rodriguez De Varon, 175 F.3d 930, 939 (11th Cir.1999) (en banc) (“The proponent of [a] downward adjustment [including the] defendant ... always bears the burden ... by a preponderance of the evidence.”); see also Stuart, 384 F.3d at 1246 (same); see also United States v. Valdovinos-Soloache, 309 F.3d 91, 94 (2d Cir.2002) (per curiam) (“[T]he party seeking to benefit from a particular fact or facts [at sentencing] often bears the burden of persuading the court”). And, similarly, when the government challenges a defendant’s factual assertion, the unsubstantiated statements of the defendant’s counsel do not constitute “sufficient evidence for the district court to make findings of fact.” United Sates v. Onofre-Segarra, 126 F.3d 1308, 1310-12 (11th Cir.1997); see also United States v. Kapelushnik, 306 F.3d 1090, 1095 (11th Cir.2002). Simply put, what is good for the goose is good for the gander.[3]
Once Arroyo objected to the government’s proffer of the facts surrounding his arrest, the government was left with the burden to prove them by a preponderance of the evidence. Despite bearing that burden, the government failed to introduce any evidence, other than relying on Arroyo’s bare arrest record and its ipse dixit assertion, to support its allegation that Arroyo was “arrested when [police] found him in a bedroom with ... more than 200 grams of methamphetamine.” See Washington, 714 F.3d at 1361. The government did not offer to provide a police report, testimony from an officer, an affidavit from an arresting officer or witness, or any other form of evidence to support its aver-ments. Nor, indeed, did the government ever ask the district court to continue the sentencing hearing so that it could gather any evidence in support of its claim, a relatively common and easy practice. See United States v. Dowd, 451 F.3d 1244, 1254-56 (11th Cir.2006) (affirming a sentence where the district court continued the sentencing hearing to provide the government with the opportunity to gather records); United States v. Smith, 289 F.3d 696, 703 (11th Cir.2002).
Rather, the government simply argues that Arroyo stipulated to the facts underlying his arrest by failing to properly object to his PSI. But Arroyo’s PSI contained no description of the factual circumstances surrounding his arrest — let alone his possession of more . than 200 grams of methamphetamine and drug paraphernalia. Again, Arroyo did not challenge the fact of his arrest. Instead, he challenged the underlying factual claim that he was in the possession of methamphetamine and paraphernalia in a bedroom, a claim that was not presented in the PSI. Because it failed to produce any evidence to substantiate its state *850 ment, the government failed to meet its burden of proof.
To be sure, sentencing courts have been granted broad discretion to consider a defendant’s background when imposing a sentence — including conduct that did not result in a conviction. See, e.g., 18 U.S.C. § 3661 (“No limitation sh[ould] be placed on the information concerning the background, character, and conduct of a person ... which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence.”); U.S.S.G. § 4A1.3(a)(2)(E) (stating that a sentencing court may consider prior criminal conduct that did not result in conviction even when imposing an upward departure). That discretion, however, is not absolute. See, e.g., Pepper v. United States, 562 U.S. 476, 131 S.Ct. 1229, 1240 n. 8, 179 L.Ed.2d 196 (2011) (noting that a “sentencing court[’s] discretion under § 3661 is subject to constitutional constraints”); Ghertler, 605 F.3d at 1269 (“A defendant has a due process right ... not to be sentenced based on false or unreliable information.”); U.S.S.G. § 6A1.3(a) (“When any factor important to the sentencing determination is reasonably in dispute ... the court may consider relevant information without regard to its admissibility ... provided that the information has sufficient indicia of reliability to support its probable accuracy.”).
The problem in this case is that the sentencing court relied on critical facts surrounding Arroyo’s 2012 arrest when it fashioned his sentence — in the face of an objection and in the absence of any proof. There were no indicia of reliability to support the government’s factual assertion. And despite that absence of any evidential support, the district court still considered that Arroyo was “in the possession again of more than 200 grams of methamphetamine” as an important “aggravating factor[]” when it calculated his sentence.[4]
Accordingly, we are constrained to vacate and remand for resentencing.
VACATED AND REMANDED.

. Arroyo also argues that his sentence is procedurally and substantively unreasonable. In view of our disposition of the case, we need not reach either of these claims.

. The dissent observes that “many of the § 3553(a) factors are not susceptible to proof, and a district court often addresses those factors based on the court’s experience and judgment.” We agree. Many considerations at sentencing do not involve facts, while others do. To use the dissent’s example, Arroyo’s counsel made several statements during her argument in support of a downward variance. She claimed, among other things, that Arroyo agreed to reside in a house where drugs were stored prior to his 2005 arrest for trafficking in methamphetamine; that when Arroyo was arrested in 2003, three men were attempting to steal his car; and that he confronted the would-be thieves with a firearm. All of these statements are concrete, irreducible facts which, if challenged by the government and relied upon by the court, would have required Arroyo to establish them by a preponderance of the evidence. However, several other sentencing considerations and observations, such as whether Arroyo's criminal history category overstated the seriousness of his criminal conduct, or whether a particular sentence would provide adequate deterrence or would create an unwarranted disparity, are not facts. Rather, they are arguments that the parties present and that the district court must consider in light of its experience and the record.

. The dissent suggests that the. defendant in this case did nothing different than the government had done when he proffered facts surrounding his prior convictions during his argument in support of a downward variance. However, this ignores a critical difference-namely, that the government did not contest Arroyo’s factual averments in any way. Just as statements in a PSI may serve the purpose of stipulations absent an objection, see Bennett, 472 F.3d at 832 (a sentencing court may rely on statements contained in a PSI with no further evidence if the defendant fails to object), so, too, may unchallenged proffers, Washington, 714 F.3d at 1361 (noting that an attorney's factual assertions may not be relied upon as the bases for a sentence only "absent a stipulation or agreement” by the parties). The government could have put Arroyo to his burden by disputing his factual averments, but unlike the defendant, did not do so. See, e.g., Kapelushnik, 306 F.3d at 1095; Onofre-Segarra, 126 F.3d at 1310-12.

. The dissent offers that the district court will ultimately impose the same sentence based on the same facts. Although that may turn out to be true, we cannot presume to know the result of the resentencing proceeding. We do not know whether the government will supply any evidence of the circumstances surrounding Arroyo's prior arrest; what evidence it may offer; what the district court's findings may be; and how all of this will impact its sentencing calculus. We do, however, know that Arroyo disputed damning facts that the district court heavily relied upon and the government presented no evidence to corroborate its assertions.