[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

————————————————

No. 21-12768

Non-Argument Calendar

————————————————

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

ALEXANDER RIVERA,

Defendant-Appellant.

————————————————

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 8:19-cr-00567-VMC-AEP-1

————————————————

Before WILSON, LUCK, and ANDERSON, Circuit Judges.

PER CURIAM:

Alexander Rivera dealt heroin and fentanyl. After two of his buyers overdosed—one fatally—Rivera was charged with possession with intent to distribute fentanyl. Rivera pleaded guilty. The district court sentenced Rivera to twenty-four months in prison—ten months above the top of his guidelines range—reasoning that this sentence was warranted either as an upward departure or an upward variance. On appeal, Rivera argues that his sentence was procedurally unreasonable. Because we find no clear error in either of the district court's independently sufficient reasons for Rivera's above-guidelines sentence, we affirm.

## FACTUAL BACKGROUND

This case started with two overdoses. On September 5, 2019, M.S. overdosed on fentanyl at a friend's home. M.S.'s friend, J.Z., told responding officers that he discovered M.S. unconscious on the bathroom floor. The officers rushed to the bathroom and gave M.S. two doses of Narcan. Responding to the treatment, M.S. regained consciousness. The officers transported M.S. to the hospital. Later, the officers found a needle and a clear baggie with a white powdery substance in the bathroom where M.S. overdosed.

At the scene, J.Z. claimed that, while he knew M.S. used various drugs, he didn't know that she used heroin. At the hospital, M.S. told the officers a different story. According to M.S., she went

to J.Z.'s house earlier that day and, while she was there, J.Z. called his drug dealer, "Thrachee."   Shortly after the call, Thrachee showed up at the house and met with J.Z. outside.  After this meeting, J.Z. gave M.S. two small baggies of heroin.  M.S. then overdosed on that heroin in the bathroom.  Officers later determined that Thrachee was the defendant, Alexander Rivera.

A second overdose took place two weeks later.  On September 19, 2019, officers responded to an overdose at a residence.  When they arrived, first responders were already administering emergency aid to J.B., who was unresponsive.  J.B.'s mother had found him lying on his bedroom floor—not breathing—with a syringe in his hand.  J.B. didn't respond to Narcan.  Fire and rescue transported J.B. to the hospital, where he was pronounced dead.  The medical examiner listed J.B.'s cause of death as "intoxication by fentanyl."

During their investigation, officers found a syringe on J.B.'s bedroom floor.  They also spotted a spoon and a small notepad on his dresser.  The spoon contained a small baggie with a white powdery residue in it.  The notepad had a phone number for "Thratch." Detectives obtained J.B.'s cell phone and discovered that J.B.'s last text message was to Rivera.  The text said, "[y]ou round my way famo," which is a common message that users send when looking to purchase drugs.

Using J.B.'s phone, the officers put into place a sting operation.  They texted Rivera, asking for more of what J.B. had last purchased.  In these messages, the officers referred to the drugs as

"fire," a street term for strong heroin containing fentanyl. Rivera agreed to meet the officers in five minutes at a nearby gas station. When he did, the officers arrested Rivera. During the arrest, the officers searched Rivera and found twenty-eight small baggies in his pocket. Lab analysis later confirmed that one of those baggies contained 2.8 grams of a heroin and fentanyl mixture.

In a post-*Miranda* interview,[1] Rivera admitted that he sold cocaine but denied selling heroin. Following the arrest, officers also interviewed J.Z., M.S.'s friend. J.Z. admitted that he purchased heroin from "T" on the day that M.S. overdosed but—contrary what M.S. told police—denied giving her any heroin. J.Z. said that he'd purchased heroin from T thirty to forty times and that he expected that the heroin he purchased from him contained fentanyl. Officers showed J.Z. a photo of Rivera and J.Z. confirmed that Rivera was T.

## PROCEDURAL HISTORY

A federal grand jury indicted Rivera for knowingly and intentionally possessing with intent to distribute a substance containing fentanyl, in violation of 21 U.S.C. sections 841(a)(1) and (b)(1)(C). Rivera pleaded guilty.

At his sentencing, the district court calculated Rivera's advisory guidelines range. While Rivera's criminal history spanned over a dozen incidents—including drug convictions—only two

---

[1] *See Miranda v. Arizona*, 384 U.S. 436 (1966).

offenses were scored, totaling three criminal history points. As a result, Rivera fell into a criminal history category of II. His base offense level was twelve but was lowered by two points for acceptance of responsibility. With a total offense level of ten and a criminal history category of II, Rivera's guidelines range was eight to fourteen months' imprisonment and three years' supervised release.

The presentence investigation report identified two possible grounds for an upward departure under sections 5K2.1 and 5K2.2 of the sentencing guidelines: (1) that Rivera had "sold an individual an unknown quantity of a heroin/fentanyl mixture" and the "individual subsequently died after he overdosed on fentanyl"; or (2) that Rivera had "sold an individual an unknown quantity of a heroin/fentanyl mixture" and the "individual's friend subsequently overdosed on heroin/fentanyl and had to be hospitalized." The report also suggested that the overdoses could justify an upward variance under 18 U.S.C. section 3553(a)(1).

At the sentencing hearing, the government said that it was not seeking an upward departure or variance because it didn't think it could meet its burden of proving causation by a preponderance of the evidence. Instead, the government asked for "a sentence at the high end of the applicable guidelines."

The district court, noting that it was not bound by the government's recommendation, concluded that two independently sufficient grounds supported an above-guidelines sentence. First, the district court found that an upward departure was warranted

under sections 5K2.1 and 5K2.2. As to M.S., the district court noted that the presentence investigation report suggested that "M.S. informed law enforcement that she overdosed on the heroin that J.Z. received from [Rivera], shortly after [Rivera] delivered the heroin to J.Z." J.Z. also "acknowledged that he purchased heroin from Rivera approximately [thirty] to [forty] times and he expects it to contain fentanyl." As to J.B., the district court observed that the police found a "spoon and small notepad" in J.B.'s room and that the notepad contained Rivera's phone number. And J.B.'s "last message" was a text to Rivera "looking to purchase drugs." The district court found that there was "enough circumstantial evidence there for an upward [departure]" and that the departure would be "so minute that it really [wouldn't] capture what this man . . . more likely than not did."

Second, the district court offered "an alternative basis" for its above-guidelines sentence: "the strength and potency of the drugs and insufficiency of the guidelines to capture that, as well as the defendant's repeated delivery of drugs." On these grounds, the district court sentenced Rivera to three years' imprisonment followed by three years of supervised release. Rivera timely appealed.

## STANDARD OF REVIEW

"We review all sentences—whether inside, just outside, or significantly outside the guidelines range—under a deferential abuse-of-discretion standard." *United States v. Henry*, 1 F.4th 1315, 1327 (11th Cir. 2021) (cleaned up). Where, as here, a defendant challenges his sentence as procedurally unreasonable, we must

"ensure that the district court committed no significant procedural error, such as . . . selecting a sentence based on clearly erroneous facts." *United States v. Shaw*, 560 F.3d 1230, 1237 (11th Cir. 2009) (quoting *Gall v. United States*, 552 U.S. 38, 51 (2007)). "Clear error review is deferential, and we will not disturb a district court's findings unless we are left with a definite and firm conviction that a mistake has been committed." *United States v. Monzo*, 852 F.3d 1343, 1345 (11th Cir. 2017) (cleaned up). We afford this deference because district courts—given their "superior position to find facts"—have an "institutional advantage" in making sentencing determinations. *Gall*, 552 U.S. at 51–52 (cleaned up).

## DISCUSSION

Rivera argues that the district court clearly erred as to both the departure and the variance. As to the departure, Rivera says there was "no factual support" that Rivera caused the overdoses. As to the variance, Rivera claims there was "no evidence" that the drugs he sold were unusually potent. We disagree.

### The Upward Departure

"There is a basis for enhancement pursuant to sections 5K2.1 and 5K2.2 where death or physical injury is a result of the crime." *United States v. Sweeting*, 933 F.2d 962, 966 (11th Cir. 1991); *see also* U.S.S.G. § 5K2.1 ("If death resulted, the court may increase the sentence above the authorized guideline range."); *id.* § 5K2.2 ("If significant physical injury resulted, the court may increase the sentence above the authorized guideline range."). The party seeking

a departure bears "the burden of proving, by a preponderance of the evidence, that [it is] entitled to the departure." *United States v. Stuart*, 384 F.3d 1243, 1246 (11th Cir. 2004) (quoting *United States v. Onofre-Segarra*, 126 F.3d 1308, 1310 (11th Cir. 1997)).

The district court did not clearly err in finding that M.S. and J.B. overdosed on the drugs Rivera sold them. As the district court pointed out, M.S. told the officers at the hospital that J.Z. gave her two baggies of heroin after J.Z. returned from buying heroin from Rivera just outside the house. M.S. said that she overdosed on that heroin in the bathroom. Similarly, J.B.'s last text message—sent hours before his death—was to Rivera, seeking drugs. And J.B. died of a fentanyl overdose. Rivera later showed up at a gas station—in response to the officers' text from J.B.'s phone—with 2.8 grams of fentanyl. On these facts, we are left with no "definite and firm conviction" that the district court erred in concluding that Rivera caused the overdoses. *Monzo*, 852 F.3d at 1345.

Against this, Rivera advances three arguments—all unconvincing.

First, Rivera contends that the government didn't "prove the facts used in sentencing by a preponderance of the evidence" because "it conceded it cannot prove that [Rivera's] actions resulted in death or great bodily harm." Rivera is wrong. As an initial matter, the district court was not bound by the government's sentencing recommendation. *See United States v. Plasencia*, 886 F.3d 1336, 1344 (11th Cir. 2018) (affirming a sentence even where the district court "appl[ied] the enhancement *sua sponte*"); *see also*

*United States v. Early*, 686 F.3d 1219, 1221 (11th Cir. 2012) (affirming a sentence in which the district court rejected the government's low-end recommendation and sentenced the defendant to almost ten years over the advisory guidelines range). Indeed, while some sections of the guidelines require the government to move for a departure, *see, e.g.,* U.S.S.G. § 5K1.1 ("Upon motion of the government . . . ."), the guideline provisions in our case do not. And in reaching its *own* sentencing decision, the district court was free to rely—as it did—on undisputed statements in the presentence investigation report. *See United States v. Polar*, 369 F.3d 1248, 1255 (11th Cir. 2004) (noting that the "district court's factual findings for purposes of sentencing may be based on . . . undisputed statements in the [presentence investigation report]"). In short, there was no procedural error in the district court's decision to reject the government's recommendation based on the presentence investigation report.

Second, Rivera points to gaps in the evidence that (he says) cut against the district court's finding that the drugs he sold caused M.S. and J.B. to overdose. So, for example, he says that "[t]here was no evidence [Rivera] was J.B.'s only supplier, nor that the drugs taken by J.B. preceding his death were the drugs provided by [Rivera]." But the district court was not required to rule out every possible cause of J.B.'s death. *See United States v. Wilson*, 788 F.3d 1298, 1317 (11th Cir. 2015) ("A factual finding cannot be clearly erroneous when the factfinder is choosing between two permissible views of evidence."). Instead, the law allows the district court to

do exactly what it did:  to look at the evidence before it—including all the circumstantial evidence—and conclude that Rivera more likely than not caused the death.  *Cf. United States v. Overstreet*, 713 F.3d 627, 637 (11th Cir. 2013) (affirming an above-guidelines sentence based on "circumstantial evidence").

Third, Rivera argues that our unpublished decision in *United States v. Arroyo-Jaimes*, 608 F. App'x 843 (11th Cir. 2015) supports reversal here.  It doesn't.  In that case, we remanded a case for resentencing where the district court relied on the government's "assertion" at sentencing that the defendant had previously possessed more than "200 grams of methamphetamine and drug paraphernalia."  *Id.* at 849.  Although the presentence investigation report included that the defendant was *arrested* for trafficking methamphetamine, it included no facts from which the court could find that the defendant *in fact* trafficked the drugs.  *Id.*  This case is different.  Here, the district court didn't, as in *Arroyo-Jaimes*, simply rely on an arrest record and the government's assertions to find guilt.  Instead, the district court relied on the presentence investigation report's detailed—and undisputed—facts in finding that M.S. and J.B. overdosed on Rivera's fentanyl.  *Arroyo-Jaimes* is therefore inapposite here.

## The Upward Variance

A court may impose a variance because "the case at hand falls outside the 'heartland' to which the [c]ommission intends individual [g]uidelines to apply," "the [g]uidelines sentence itself fails properly to reflect [section] 3553(a) considerations," or "perhaps

because the case warrants a different sentence regardless." *Rita v. United States*, 551 U.S. 338, 351 (2007). As with a departure, a court's variance may be procedurally unreasonable if the court "select[ed] a sentence based on clearly erroneous facts." *United States v. Coglianese*, 34 F.4th 1002 (11th Cir. 2022) (quoting *Gall*, 552 U.S. at 51). "And in all cases, the appealing party bears the burden of showing that the district court's sentence is unreasonable in light of the record and the [section] 3553(a) factors." *United States v. Harris*, 964 F.3d 986, 988 (11th Cir. 2020) (cleaned up).

Rivera hasn't met that burden here. The district court found that the "the strength and potency of the drugs and insufficiency of the guidelines to capture that, as well as the defendant's repeated delivery of drugs," justified an upward variance. None of these findings are clearly erroneous. There is nothing improper about the district court recognizing the "strength and potency" of fentanyl. In fact, Rivera's counsel referred to the drug as "devastating" at sentencing. And the district court was entitled to rely on its experience in discussing the dangers of fentanyl. *See United States v. Shaw*, 560 F.3d 1230, 1238 (11th Cir. 2009) ("There is no requirement that sentencing judges confine their considerations to empirical studies and ignore what they have learned from similar cases over the years. Indeed, one of the reasons district courts are given such wide latitude in sentencing is their experience in handling criminal cases."). Nor was there any error in the district court's finding on Rivera's "repeated delivery of drugs." That's because

Rivera himself admitted to dealing cocaine, and J.Z. told officers that he had purchased heroin from Rivera thirty to forty times.

In response, Rivera argues only that there was "no evidence from which the district court [could] conclude that the heroin/fentanyl was of a strength/potency not contemplated by the guidelines" because the guidelines "would have been promulgated with the average strength/potency of heroin/fentanyl" in mind. Rivera's point, in other words, was that the government did not prove that *his* fentanyl was stronger than the fentanyl considered by the guidelines. Rivera misconstrues the district court's ruling. The district court didn't find that *Rivera's* fentanyl was particularly potent. It said that, in its view, fentanyl *in general* is particularly potent and dangerous, and it stated its position that the guidelines don't adequately account for this fact. "The Supreme Court has held that variances from the advisory guidelines range can sometimes be based on the sentencing judge's disagreement with whether a guideline properly reflects the [section] 3553(a) factors." *United States v. Rosales-Bruno*, 789 F.3d 1249, 1254 (11th Cir. 2015). Rivera hasn't contended that the district court erred in making that sort of a judgment here.

AFFIRMED.