[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-14893
Non-Argument Calendar
_____

D.C. Docket No. 4:14-cr-00004-RH-CAS-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MCKENZIE DESHOMMES FRANCOIS,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida
_____

(December 2, 2015)

Before ED CARNES, Chief Judge, JORDAN, and JULIE CARNES, Circuit
Judges.

PER CURIAM:

In May 2013 McKenzie Deshommes Francois left his wallet in a Tallahassee airport. That seemingly mundane mistake triggered a criminal fraud investigation after those attempting to return it to him found that it contained 13 debit cards bearing other people's names — the same kind of debit cards routinely used to disburse federal tax refunds. When authorities searched Francois' cell phone, they found the personal identifying information of more than 50 people.

Francois ultimately pleaded guilty to four federal charges: one count of conspiring to defraud the United States, in violation of 18 U.S.C. § 286; one count of theft of public money, in violation of 18 U.S.C. § 641; one count of using "unauthorized access devices" (i.e., debit cards), in violation of 18 U.S.C. § 1029(a)(2); and one count of identity theft, in violation of 18 U.S.C. § 1028A. The district court sentenced him to 61 months in prison.[1] On appeal Francois contends that the district court erred in calculating the amount of loss and number of victims attributable to him, which the district court based on the fraudulent tax returns enumerated in the presentence investigation report (PSR). Francois argues that the government failed to produce sufficient, reliable evidence linking him to 37 of the 56 fraudulent returns listed in the PSR.

---

[1] That sentence consists of 37 months on the first three counts of conviction, followed by a mandatory minimum consecutive sentence of 24 months on the identity theft conviction. See id. § 1028A(a)(1), (b).

The United States Sentencing Guidelines provide for an increased offense level based on the amount of loss attributable to a defendant's fraudulent conduct. See U.S.S.G. § 2B1.1(b)(1).  According to the guidelines, "loss is the greater of actual loss or intended loss."[2]  Id. § 2B1.1 cmt. n.3(A).  "A sentencing court need only make a reasonable estimate of the loss, given the available information." United States v. Barrington, 648 F.3d 1178, 1197 (11th Cir. 2011) (quotation marks omitted).  But the court "may not speculate about the existence of a fact that would result in a higher sentence," and the government must prove the loss by a preponderance of the evidence, using "reliable and specific evidence."  Id. (quotation marks omitted); see United States v. Medina, 485 F.3d 1291, 1304 (11th Cir. 2007).  Because the district court "is in a unique position to assess the evidence and estimate the loss," its "loss determination is entitled to appropriate deference."  Barrington, 648 F.3d at 1197.  We review it only for clear error.  Id.

The sentencing guidelines also provide for an increased offense level based on the number of victims harmed by an offense.  See U.S.S.G. § 2B1.1(b)(2).  The government must present the district court with "sufficient and reliable evidence" to prove the number of victims by a preponderance of the evidence.  United States v. Washington, 714 F.3d 1358, 1362 (11th Cir. 2013).  We review de novo the

---

[2] Actual loss means "the reasonably foreseeable pecuniary harm that resulted from the offense."  Id. § 2B1.1 cmt. n.3(A).  Intended loss means "the pecuniary harm that was intended to result from the offense," even if it "would have been impossible or unlikely to occur."  Id.

3

legal question of whether an individual qualifies as a victim, but we review only for clear error the district court's factual finding of the number of victims.  United States v. Foley, 508 F.3d 627, 632 (11th Cir. 2007).  In cases involving identity theft, "any individual whose means of identification was used unlawfully or without authority" qualifies as a victim.  U.S.S.G. § 2B1.1 cmt. n.4(E).

The PSR held Francois responsible for a total of 56 fraudulent tax returns, including: (1) 10 returns associated with the debit cards found in Francois' wallet; (2) nine returns that had been filed using the personal identifying information on Francois' phone; and (3) 37 returns that the Internal Revenue Service had linked to Francois during its investigation.  Together those false returns returns sought tax refunds in the amount of $522,410.00.  The PSR therefore increased Francois' offense level by 14 levels for an amount of loss over $400,000.  See U.S.S.G. § 2B1.1(b)(1)(H).  It also increased his offense level by another 4 levels because the offense involved more than 50 victims — one victim for each fraudulent return. See id. § 2B1.1(b)(2)(B).

At the sentence hearing, the government called IRS Special Agent Regina Merchant to explain how she linked Francois to the 37 tax returns not directly associated with information found in his wallet or phone.  Merchant testified that she first determined that all of the false returns created using the personal identifying information from Francois' phone were nearly identical.  She then

compared those returns to others filed during the same narrow time period that the IRS had flagged as fraudulent. She discovered that a number of those other returns had been submitted from one of four IP addresses — the same IP addresses that Francois had used to file the returns created with the information on his phone. Thirty-seven of those returns were exactly alike, so Merchant attributed them to Francois.[3]

Francois argued at sentencing — and argues on appeal — that the evidence presented by the government was not sufficient to prove he had filed those 37 returns. According to Francois, the IP addresses might have been accessible to any number of people, including other individuals involved in unrelated illegal activity. He also argues that the fact that those returns were identical to ones he submitted does not necessarily mean that he or his coconspirators filed them.

The district court was not persuaded, and neither are we. Although the district court acknowledged that the government's evidence did not prove beyond a reasonable doubt that Francois had submitted the 37 additional returns, the court explicitly found that it was "more likely than not" that Francois submitted those returns himself or that they "were part of the scope of criminal activity he agreed to undertake." See U.S.S.G. § 1B1.3(a)(1)(B) (providing that, when a defendant is

---

[3] The government also introduced a number of exhibits at sentencing, including the summary of an interview in which Francois admitted to filing a number of false tax returns in April and May 2013 — the same period during which the 37 fraudulent returns were filed.

5

convicted of a conspiracy charge, "all reasonably foreseeable acts and omissions of others" in furtherance of the conspiracy are considered relevant conduct at sentencing).  That finding was not clearly erroneous.  See Anderson v. City of Bessemer City, 470 U.S. 564, 574, 105 S. Ct. 1504, 1511 (1985) ("Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.").  Neither was the district court's decision to increase Francois' offense level by the amount of loss and number of victims associated with all 56 fraudulent tax returns.  We will affirm Francois' sentence.

The district court does, however, need to correct a clerical error in the judgment.  See United States v. Massey, 443 F.3d 814, 822 (11th Cir. 2006) ("We may sua sponte raise the issue of clerical errors in the judgment and remand with instructions that the district court correct the errors.").  The judgment states that Francois was convicted of violating 18 U.S.C. "§ 11029(a)(2)."  The record shows, however, that he was convicted of violating § 1029(a)(2).  On remand, the district court should correct that error.

We **AFFIRM** Francois' sentence.  We **VACATE AND REMAND** the judgment to the district court for the limited purpose of correcting the clerical error in it.