[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 11-14177

_____

D.C. Docket No. 6:11-cr-101-JA-KRS-4

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

vs.

GARY WASHINGTON,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(April 26, 2013)

Before PRYOR and JORDAN, Circuit Judges, and PRO, District Judge.*

JORDAN, Circuit Judge:

_____

*Honorable Philip M. Pro, United States District Judge for the District of Nevada, sitting by
designation.

Sometimes a number is just a number,[1] but when the number at issue triggers an enhancement under the Sentencing Guidelines, that number matters. In this appeal we decide whether the government presented sufficient evidence that 250 or more persons or entities were victimized by the fraud scheme in which Gary Washington participated. Because the government failed to put on any evidence that there were 250 or more victims, we vacate Mr. Washington's sentence and remand for the district court to resentence Mr. Washington with a 2-level enhancement under U.S.S.G. § 2B1.1(b)(2)(A) rather than a 6-level enhancement under § 2B1.1(b)(2)(C).

## I

In fraud causes, the Sentencing Guidelines provide for certain enhancements to the base offense level depending on the number of victims. If there are 10 or more victims, there is a 2-level enhancement; if there are 50 or more victims, there is a 4-level enhancement; and if there are 250 or more victims, there is a 6-level enhancement. *See* U.S.S.G. §§ 2B1.1(b)(2)(A)-(C).

## A

Mr. Washington pled guilty to four offenses: conspiring with others to traffic in unauthorized credit card numbers with the intent to defraud, in violation of 18 U.S.C. § 371; using and trafficking unauthorized credit card numbers with the

---

[1] *See, e.g.,* J. Keefe, *Dow 10,000: Sometimes a Number is Just a Number*, CBS Moneywatch (Oct. 15, 2009).

intent to defraud, in violation of 18 U.S.C. §§ 1029(a)(2) & (c)(1)(a)(i); possessing 15 or more unauthorized credit card numbers with the intent to defraud, in violation of 18 U.S.C. §§ 1029(a)(3) & (c)(1)(a)(i); and possessing a re-encoding machine with the intent to defraud, in violation of 18 U.S.C. §§ 1029(a)(4) & (c)(1)(a)(ii).  At the change of plea hearing, the government explained in its factual proffer that Mr. Washington and his cohorts had fraudulently obtained the credit card numbers of others by purchasing them (together with related account information) over the Internet.  They then encoded those numbers and account information onto gift cards which they sold or used to make retail purchases. Nothing in the government's proffer, however, indicated that there were 250 or more victims.

The probation office stated in the presentence investigation report that Mr. Washington participated in the fraud scheme throughout its existence, from May of 2010 to March of 2011.  The probation office assessed a 6-level enhancement under U.S.S.G. § 2B1.1(b)(2)(C), explaining that "the offense involved hundreds of individual victims whose financial information was stolen and unlawfully used to make counterfeit credit cards, numerous retail businesses where the counterfeit credit cards were used to make purchases, and approximately 30 credit card companies which incurred losses as a result of the fraud."

In his objections to the presentence investigation report, Mr. Washington maintained that he was involved in the scheme only from September of 2010 to March of 2011. He also "dispute[d] the fact that there [were] more than 250 victims," and "requeste[d] that at least 250 businesses or individuals be identified by name." In response to Mr. Washington's objections, the probation office prepared an addendum to the presentence investigation report. In that addendum, the probation office continued to assert that Mr. Washington participated in the scheme from May of 2010 to March of 2011, and stated that he had been provided with "spreadsheets detailing the victims," who numbered over 250.

The government, in its sentencing memorandum, acknowledged that Mr. Washington began participating in the fraud scheme in September of 2010 (and not in May of 2010, as the presentence investigation report had indicated), and therefore could only be held responsible for the losses caused "during the time that [he] was involved in the conspiracy."[2] With respect to Mr. Washington's challenge to the enhancement for 250 or more victims, the government said that "thousands of individuals" had their credit card numbers stolen. It did not, however, submit any evidence to support this assertion.

In his response to the government's sentencing memorandum, Mr. Washington "concede[d] that in all probability there were more tha[n] 250

---

[2] As a result, the government conceded that Mr. Washington's loss amount under the Sentencing Guidelines fell from $1.2 million to $900,000.

4

victims," but noted that the government had only identified 70 banks and financial institutions as victims.  He again "requeste[d] hard evidence, and not verbal assurances of opposing counsel," that there were 250 or more victims.

So, as things stood prior to the sentencing hearing, the government was advocating for the § 2B1.1(b)(2)(C) enhancement, and Mr. Washington was objecting to the enhancement.  The government, therefore, bore the burden of establishing the factual basis for the enhancement at the hearing.  *See, e.g., United States v. Askew*, 193 F.3d 1181, 1183 (11th Cir. 1999).

**B**

At the sentencing hearing, the district court reduced the loss amount for Mr. Washington based on the parties' agreement that he joined the fraud scheme in September of 2010.  Mr. Washington objected to the 6-level enhancement under § 2B1.1(b)(2)(C), arguing that the defense had "never been shown more than 250 victims" and that he "wanted the [government] just to satisfy to the court's satisfaction that there [were] more than 250 victims[.]"

The government responded that the victims were the individual cardholders, who numbered over 6,000, and that "there were well more than 250 during the time -- ."[3]  At that point the district court interjected: "That's the figure that's been applied to other defendants.  That method of calculation has been used in all of the

---

[3] We assume that the government meant to say "during the time Mr. Washington was involved in the scheme."

5

other cases.  The objection is overruled."  The government did not present any evidence – no spreadsheets, no documents, no witnesses – identifying 250 or more victims.  Nor did it ask the district court for an opportunity to put on any such evidence.

The district court ultimately found that Mr. Washington had a total offense level of 27 with a criminal history category of IV, leading to an advisory guideline range of 100-125 months' imprisonment.  The district court granted the government's motion for a substantial assistance reduction pursuant to U.S.S.G. § 5K1.1, and reduced Mr. Washington's total offense level to 25 and his advisory guideline range to 84-105 months' imprisonment.  The district court declined to vary from that range, and sentenced Mr. Washington to 105 months in prison, followed by 3 years of supervised release.  It also ordered Mr. Washington to pay $900,982.27 in restitution to the 34 victims – all financial institutions – identified in the presentence investigation report.

## II

When the government seeks to apply an enhancement under the Sentencing Guidelines over a defendant's factual objection, it has the burden of introducing "sufficient and reliable" evidence to prove the necessary facts by a preponderance of the evidence.  *See, e.g., United States v. Perez-Oliveros*, 479 F.3d 779, 783 (11th Cir. 2007); *Askew*, 193 F.3d at 1183.  In this case the government failed to

carry its burden, as it did not introduce any evidence to support the § 2B1.1(b)(2)(C) enhancement.

The government told the district court at the sentencing hearing that over 6,000 individuals had their credit card numbers and related account information stolen, and that there were 250 or more victims during the time Mr. Washington was involved in the scheme. This representation, however, was insufficient. As we have said before, absent a stipulation or agreement between the parties, an attorney's factual assertions at a sentencing hearing do not constitute evidence that a district court can rely on. *See, e.g., United States v. Onofre-Segarra*, 126 F.3d 1308, 1310-11 (11th Cir. 1997) ("The arguments of counsel and the challenged conclusions of the presentence investigation report . . . are generally an insufficient basis upon which to depart from the guidelines."); *United States v. Wilson*, 884 F.2d 1355, 1356 (11th Cir. 1989) ("At the sentencing hearing defendant's counsel argued that defendant's plea negotiations demonstrated acceptance of responsibility but offered no evidence that would establish his qualification for a reduction under this section. . . . Because at sentencing defendant offered no evidence of acceptance of responsibility and the evidence at trial did not clearly demonstrate such an acceptance, defendant simply failed to meet his burden of proof [.]").

We understand that the district court had applied the § 2B1.1(b)(2)(C) enhancement to Mr. Washington's co-conspirators, but on this record those rulings could not serve as a basis for applying the enhancement to Mr. Washington. First, "evidence presented at the trial [or sentencing hearing] of another may not – *without more* – be used to fashion a defendant's sentence if the defendant objects. In such a case, where the defendant has not had the opportunity to rebut the evidence or generally to cast doubt upon its reliability, he must be afforded that opportunity." *United States v. Castellanos*, 904 F.2d 1490, 1496 (11th Cir. 1990). If the government wanted to rely on evidence presented and findings made during the co-conspirators' sentencing hearings, it had the obligation to order the transcripts of those hearings and make them available to Mr. Washington and the district court. Second, Mr. Washington joined the fraud scheme in September of 2010, four months after its inception, and could not "be held accountable for conduct that occurred prior to his entry into the joint criminal undertaking." *United States v. Hunter*, 323 F.3d 1314, 1320 (11th Cir. 2003) (citing U.S.S.G. § 1B1.3, cmt. (n.2)). Because it failed to present any evidence as to the identities of the individual victims, and when their credit card numbers and related account information were stolen, the government did not meet its burden of establishing that the fraud scheme involved 250 or more victims from September of 2010 to March of 2011.

## III

The government asks that it be allowed to prove on remand that there were 250 or more victims for whom Mr. Washington was responsible. We decline the government's request.

Nothing prevented the government – which was aware of Mr. Washington's objection – from putting on evidence concerning the number of victims at the sentencing hearing, and a party who bears the burden on a contested sentencing issue will generally not get to try again on remand if its evidence is found to be insufficient on appeal. We have discretion to "permit[ ] the government to present evidence at resentencing even though it amount[s] to giving the party 'a second bite at the apple.'" *United States v. Martinez*, 606 F.3d 1303, 1304-05 (11th Cir. 2010). But often a "remand for further findings is inappropriate when the issue was before the [district] court and the parties had an opportunity to introduce relevant evidence," *United States v. Canty*, 570 F.3d 1251, 1257 (11th Cir. 2009), and here the government failed to present any evidence concerning the number of victims. *See United States v. Alred*, 144 F.3d 1405, 1422 (11th Cir. 1998) ("We conclude that the evidence presented by the government . . . of Roy Alred's buyer/seller and fronting relationships is insufficient to support his four-level enhancement under [§] 3B1.1(a) for having a leadership role. . . . On remand, the district judge will resentence him without the [§] 3B1.1(a) enhancement."). *See*

9

*also United States v. Archer*, 671 F.3d 149, 168 (2d Cir. 2011) ("The consensus among our sister circuits is that generally where the government knew of its obligation to present evidence and failed to do so, it may not enter new evidence on remand. Nonetheless, there are cases (a) where the government's burden was unclear, (b) where the trial court prohibited discussion of the issue, or (c) where the evidence was, for a good reason, unavailable, in which the district court was permitted, in its discretion, to hear new evidence."); *United States v. Leonzo*, 50 F.3d 1086, 1088 (D.C. Cir. 1995) ("No special circumstances justified, or even explained, the government's failure to sustain [its] burdens.").

## IV

The 6-level enhancement under § 2B1.1(b)(2)(C) is set aside, and the case is remanded for resentencing without that enhancement. The district court should impose a 2-level enhancement under § 2B1.1(b)(2)(A) because Mr. Washington has conceded on appeal that there were 10 or more victims of his conduct.

**VACATED AND REMANDED.**