[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 14-11052
Non-Argument Calendar

_____

D.C. Docket Nos. 1:11-cv-00526-KD; 1:10-cr-00019-KD-N-1

WILLIAM R. JEWETT,

Petitioner-Appellant,

versus

UNITED STATES OF AMERICA,

Respondent-Appellee.

_____

No. 14-11053
Non-Argument Calendar

_____

D.C. Docket Nos.  1:11-cv-00525-KD; 1:09-cr-00076-KD

WILLIAM R. JEWETT,

Petitioner-Appellant,

versus

UNITED STATES OF AMERICA,

Respondent-Appellee.

_____

Appeals from the United States District Court
for the Southern District of Alabama
_____

(January 5, 2015)

Before HULL, JULIE CARNES and FAY, Circuit Judges.

PER CURIAM:

William Jewett, a pro se federal prisoner, appeals the district court's denial of his 28 U.S.C. § 2255 motion to vacate. This Court granted a certificate of appealability as to whether the district court erred in denying Jewett's claim that at sentencing his attorney provided ineffective assistance of counsel by failing to obtain and submit documentation of his prison-release date for his 1991 Texas convictions. The district court denied this ineffective assistance claim because, inter alia, Jewett's counsel "made a concerted effort" to obtain the documents and thus his performance was not constitutionally deficient. After review, we affirm.

2

## I.  FACTS

### A.    Conviction and Sentencing

Jewett pled guilty to one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1), and one count of failing to appear during pretrial release, in violation of 18 U.S.C. § 3146(a)(1).  As part of his plea agreement, Jewett agreed not to contest his sentence on appeal or in post-conviction proceedings, except to contest a sentence that was in excess of the statutory maximum or that was an upward departure from the guidelines range, or to raise a claim of ineffective assistance of counsel.

In June 2010, prior to Jewett's sentencing, a probation officer prepared a Presentence Investigation Report ("PSI"), which, inter alia, assigned three criminal history points for Jewett's 1991 Texas convictions, pursuant to U.S.S.G. § 4A1.1(a) (2009).  Jewett's total of six criminal history points yielded a criminal history category of III, and an advisory guidelines range of 78 to 97 months' imprisonment.

Jewett's attorney, J. Clark Stankoski, filed an objection, arguing that Jewett should not receive three criminal history points for the 1991 Texas convictions because 17 years separated his incarceration for those Texas convictions and the commencement of his instant federal firearm offense in November 2008.  See U.S.S.G. § 4A1.1(a) cmt. n.1 (2009) ("A sentence imposed more than fifteen years

3

prior to the defendant's commencement of the instant offense is not counted unless the defendant's incarceration extended into this fifteen-year period.").

At the September 2010 sentencing hearing, Jewett's attorney renewed his objection to the three criminal history points. Jewett's attorney argued that, although the Texas court sentenced Jewett to five years in prison on July 22, 1991, Jewett was incarcerated for only 138 days and was released from prison, without probation, on October 17, 1991. Jewett's attorney further stated that he had ordered certified copies of the Texas convictions, but had not entered them in the record. When the district court asked whether the October 17, 1991 date was in the record, Jewett's attorney stated that the Texas records he had obtained were difficult to interpret. The district court then asked whether the records supported Jewett's claim that he did not serve any probation, and Jewett's attorney responded that the records were silent as to probation.

The district court turned to the government, stating that, after the defendant challenges a PSI provision, the government has to present facts on the issue. The government pointed to an undisputed factual allegation in the PSI, which stated that a witness saw Jewett in possession of firearms as early as December 2004, and argued that Jewett's relevant conduct began in 2004, not 2008. As a result, even if Jewett's incarceration ended in 1991, the instant offense commenced in 2004, within the fifteen-year period required by U.S.S.G. § 4A1.1(a).

4

After discussion, the district court stated that it disagreed with the government's position on relevant conduct. The district court nonetheless overruled Jewett's objection, finding that, regardless of how long Jewett was in prison in Texas, he received a five-year sentence on July 22, 1991. Therefore, the sentence—accounting for time served—did not end until 1995, which was 13 years before the 2008 commencement of Jewett's firearm offense. The district court then determined that Jewett's guidelines range was 78 to 97 months and imposed consecutive 38-month sentences on each count, for a total 76-month sentence.[1]

## B.    Section 2255 Proceedings

Relevant to this appeal, Jewett's § 2255 motion argued that his attorney was ineffective by failing to obtain the documentation needed to support his argument that the 1991 Texas convictions were too old to garner criminal history points. Jewett pointed out that, without those three points, he would have had a criminal history category of II and an advisory guidelines range of 70 to 87 months. Jewett submitted a document, obtained by Jewett's brother from the Texas Department of Criminal Justice, indicating that Jewett was released from prison in Texas on January 14, 1992.

---

[1]After announcing that it would impose two consecutive 38-month sentences, the district court stated that it had meant to impose a 78-month sentence (at the low-end); whereas, two 38-month consecutive sentences are 76 months. The district court stated: "but that's 76 months and that is what I will do because that's what I've announced." Thus, although the district court initially intended to give Jewett the low end of the applicable advisory guidelines range, Jewett ultimately received a two-month downward variance from 78 to 76 months.

At an evidentiary hearing, Jewett's brother testified that, a few months before Jewett's September 2010 sentencing, he contacted the Texas Department of Criminal Justice and was verbally told that Jewett was released in January 1992 and then relayed this release date to Jewett's attorney.  Jewett himself testified that he told his attorney that they needed the Texas conviction records and asked his brother also to urge his attorney to get documents showing his release date.  Jewett admitted that, prior to and at his sentencing, he was not sure when he had been released from the Texas prison.

Jewett's attorney, Stankoski, testified that, prior to sentencing, he requested a certified copy of Jewett's entire criminal file from the Texas court in an effort to get the dates of Jewett's convictions and release from incarceration.  However, the documents Stankoski received from the Texas court in April 2010 did not contain any indication of a release date.  Consequently, a few days later, Stankoski performed internet research to discover the agency in Texas analogous to a Department of Corrections and asked his staff to obtain a "letter of incarceration." Stankoski's staff faxed a request to a person named "Nichole" asking "to find out how long our client [Jewett] was incarcerated in the state of Texas."  Stankoski's staff reported back to him that the Texas Department of Corrections had advised that Stankoski already "had everything that there was in the certified record that

had been sent from the clerk's office." At that point, Stankoski believed he had done all he could to obtain documentation of Jewett's release date.

As to Jewett's § 2255 motion, a magistrate judge entered a Report and Recommendation ("R&R") that recommended granting Jewett's ineffective assistance claim as to the failure to obtain release-date documentation. After objections from both parties, the district court entered an order rejecting the R&R's recommendation on that claim.

The district court (which was also the sentencing court) acknowledged that it had erred at sentencing both in requiring Jewett, rather than the government, to carry the burden to prove the Texas release date and in assigning three criminal history points to the Texas convictions. The district court concluded, however, that Jewett's attorney had "made a concerted effort to obtain the necessary records" and that his performance in that regard was not deficient. The district court noted that both the probation officer and the government also were unable to obtain the necessary documentation by the time of Jewett's sentencing.

The district court further concluded that Jewett had not shown prejudice. The district court reasoned that, because it had concluded erroneously that the sentence length (five years) and not the release date was the operative fact, "defense counsel's failure to obtain the end of incarceration date did not have any significant effect on the outcome."

7

## II. DISCUSSION

To establish ineffective assistance of counsel, Jewett had the burden to show that: (1) his counsel's performance was deficient; and (2) he suffered prejudice as a result of the deficient performance.  Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984).  Because the movant must establish both prongs, we need not address the prejudice prong if the performance prong is not satisfied, and vice versa.  Dell v. United States, 710 F.3d 1267, 1273-74 (11th Cir. 2013), cert. denied, ___ U.S. ___, 134 S. Ct. 1508 (2014).

In judging whether counsel's performance was deficient, the proper measure is "reasonableness under prevailing professional norms," and judicial scrutiny of counsel's performance "must be highly deferential."  Strickland, 466 U.S. at 688-89, 104 S. Ct. at 2065.  As such, we must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  Id. at 689, 104 S. Ct. at 2065.   Stated another way, "trial counsel's error must be so egregious that no reasonably competent attorney would have acted similarly."  Harvey v. Warden, 629 F.3d 1228, 1239 (11th Cir. 2011).

Here, we readily agree with the district court that Jewett did not establish that his attorney's efforts to obtain documentation of his Texas release date

8

constituted deficient performance.[2]  As the district court noted, under federal sentencing law, it is the government, not the defendant, who bears the burden to prove any disputed facts supporting a guidelines enhancement.  See United States v. Washington, 714 F.3d 1358, 1361 (11th Cir. 2013) ("When the government seeks to apply an enhancement under the Sentencing Guidelines over a defendant's factual objection, it has the burden of introducing sufficient and reliable evidence to prove the necessary facts by a preponderance of the evidence." (quotation marks omitted)).  Thus, once Jewett objected to the three criminal history points because Jewett's incarceration for the Texas convictions ended more than 15 years prior to the commencement of his firearm offense, it was the government's burden to procure and submit whatever documentation was needed to support the PSI's calculation of Jewett's criminal history score.

Nonetheless, Jewett's attorney, in an effort to disprove the criminal history calculation, sought to obtain release-date documents himself, first by requesting a certified copy of Jewett's entire criminal file from the Texas court of conviction and, when that proved unfruitful, contacting the Texas agency analogous to the Department of Corrections.  When this latter attempt also failed, attorney Stankoski's staff was advised by the Texas agency that no further documentation

---

[2]"In a 28 U.S.C. § 2255 proceeding, we review a district court's legal conclusions de novo and factual findings for clear error."  Devine v. United States, 520 F.3d 1286, 1287 (11th Cir. 2008).  Whether counsel rendered ineffective assistance "is a mixed question of law and fact that we review de novo."  Id.

was available.  At this point, perhaps a more persistent or skeptical attorney might not have given up.  We cannot say, however, that it was objectively unreasonable for Jewett's attorney to rely upon the Texas agency's representation and stop looking for documentation.  Instead, at sentencing, Jewett's attorney reasserted the objection to the three criminal history points and argued that Jewett was released from the Texas prison outside the 15-year period, thus keeping the burden to produce factual support for the criminal history points on the government.

The fact that, at sentencing, the district court seemed to suggest it was Jewett's burden to produce documentation of his Texas release date does not render his attorney's performance deficient.  Likewise, the fact that Jewett's brother later was able to obtain a document from Texas containing the January 14, 1992 release date also does not establish deficient performance.  We do not measure counsel's performance with the benefit of hindsight, but rather from counsel's perspective at the time the decision was made.  See Strickland, 466 U.S. at 689, 104 S. Ct. at 2065.  In preparing for Jewett's sentencing, it was reasonable for Jewett's attorney to take the Texas agency's word that the Texas court of conviction had produced all of the available documents about Jewett's 1991 convictions.

In sum, Jewett did not carry his burden to show that his attorney provided ineffective assistance of counsel with respect to the release-date documentation.

10

Accordingly, we affirm the district court's denial of Jewett's § 2255 motion to vacate.

**AFFIRMED.**