[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-12153
Non-Argument Calendar
_____

D.C. Docket No. 5:16-cr-00012-RH-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

VERONICA DALE HAHN,
a.k.a. Veronica Sims,

Defendant-Appellant.


_____

Appeal from the United States District Court
for the Northern District of Florida
_____

(January 22, 2018)

Before ED CARNES, Chief Judge, JULIE CARNES, and HULL, Circuit Judges.

PER CURIAM:

Veronica Dale Hahn pleaded guilty mid-trial to one count of theft of public money, 18 U.S.C. § 641.  She appeals her conviction and sentence.  Hahn contends that her guilty plea is invalid because the district court failed to ensure she understood the nature of the offense charged and because there was an insufficient factual basis for her plea.  She also contends that the district court erred by finding that the loss amount exceeds $250,000 and enhancing her sentence on that basis.

I.

Hahn is a veteran of the United States Army.  She received disability benefits from the United States Department of Veterans Affairs for several ailments, including a rare autoimmune disease called VKH that can cause loss of vision.  Based on Hahn's paperwork, medical records, and the results of medical examinations, the VA rated her impaired vision as 50% disabling in 2001 and 100% disabling in 2003.  Hahn's blindness-related disability rating, coupled with ratings for her other ailments, yielded a 100% combined disability rating.  That combined rating entitled Hahn to significant disability benefits.

The VA began to question Hahn's purported vision loss when it learned she applied for and received driver's licenses in three states while collecting benefits for total blindness.  Following that lead, Special Agent Eric Lindquist surveilled Hahn to see if her vision was better than she claimed.  And indeed it was.

2

On a foggy morning in May 2014, just before sunrise, Agent Lindquist observed Hahn drive away from her home.  He tailed Hahn as she drove for about 20 minutes to the Northwest Florida Reception Center on a route that included a "fairly windy" road, construction and school zones, changes of speed, stop signs, and traffic lights.  After confirming that Hahn worked at the reception center, Agent Lindquist set up a pole camera in the parking lot.  Over the next 30 days, he collected video recordings and photographs capturing at least sixteen instances of Hahn driving with no evidence of impairment.

As a result of that investigation, the VA reduced Hahn's blindness-related disability rating from 100% to 0% and deemed that reduction retroactive to 2001.  That blindness-related rating reduction lowered Hahn's combined disability rating from 100% to 90%.  Hahn challenged the combined disability rating reduction, claiming new benefits based on other ailments that, if retroactive, would offset her combined disability rating reduction.  The VA rejected Hahn's claim and she appealed to the Board of Veterans Appeals.  That appeal is pending.

A one-count indictment charged Hahn with knowingly and willfully embezzling, stealing, and converting to her own use public money in the amount of $395,596.85.  At trial, the government presented the following testimony.

First, Agent Lindquist detailed his investigation, including the pole camera footage and videos he took when tailing Hahn's car.  The government played three of those videos for the jury.

Two VA doctors testified next.  Dr. Watkins, an ophthalmology expert, testified that he examined Hahn in 2002 and that she complained of pain in both eyes and "extremely poor" vision.  Dr. Watkins stated that Hahn's complaints were inconsistent with the results of several tests he conducted, that her eyes showed no reason for poor vision, and that he "was very suspicious that most likely [Hahn's] vision was much better than what she was telling [him]."  Dr. Saxton, an optometry expert, testified that she examined Hahn in 2003 and that Hahn complained of pain in both eyes and deteriorating vision.  Like Dr. Watkins, Dr. Saxton stated that Hahn's complaints were inconsistent with her medical records and that her eyes showed no reason for poor vision.

Three witnesses — one from each of the New Mexico, Florida, and Alabama Departments of Motor Vehicles — testified that Hahn applied for and received a total of four driver's licenses between 2004 and 2012.  Each time, she passed a vision test with both eyes testing without corrective lenses at 20/20 or 20/40.

Another witness, the director for personal services at a university Hahn attended, testified that Hahn did not request or receive any accommodations for visual impairment.  But she did receive a parking permit in 2004.

Four witnesses who knew Hahn from work testified that they had no reason to believe Hahn was blind.  Ms. Key, director of operations for one of Hahn's previous employers, stated that Hahn had no noticeable mobility problems, did not request accommodations, and did not note in her job application any ailment that would affect her job performance.  Ms. Agerton, who worked with Hahn at the Florida Department of Corrections, stated that visual impairment would have posed a security and safety risk.  Ms. Heaton, who worked with Hahn at the Northwest Florida Reception Center, stated that Hahn's job required sight and that Hahn never complained about her vision.  Mr. Knight, who hired Hahn to work with inmates in a work release program, stated that Hahn's job required sight and that shortly before Hahn resigned, she told Knight she would go blind in the future.

Next, the government called to the stand two VA employees, both of whom testified that Hahn said she was unable to drive due to blindness in 2013.  Ms. Rudykoff, the VA's Visual Impairment Service Team Coordinator, testified that during an interview, Hahn stated she could not drive and depended on others for transportation.  Agent Keller of the Office of Inspector General testified that he

5

spoke with Hahn by phone and she confirmed that she could "absolutely not" drive a car, and that her husband was her caregiver and had to be with her at all times.

The government then recalled Agent Lindquist. He testified that, as part of his investigation, he made a series of recorded calls to Hahn to obtain more information. Before the government could publish those recordings to the jury, the court took a recess, after which Hahn told the court she wished to plead guilty.

The district court placed Hahn under oath and advised her of her rights. Hahn confirmed she understood that, by pleading guilty, she would give up those rights and any defense to the offense charged. The court stated that Hahn was charged with "receiving Veterans Administration benefits, payments that you were not entitled to, and then retaining those benefits." Hahn affirmed that she spoke with counsel about what the government must prove to establish that charge. She admitted that she knew the VA relied on false information when it gave her a 100% blindness-related disability rating; that she took VA benefits despite knowing the VA relied on false information; that she lied about being able to drive; and that she was the person driving in the video footage.

When the court asked Hahn if she told the doctors the truth when they examined her, Hahn said that she did. The court asked why Hahn sought to plead guilty yet protested her innocence. Hahn replied, "Okay. Just say I'm guilty." The court reminded Hahn she was under oath and explained that it would not

6

accept a guilty plea unless it was satisfied that she committed the charged crime. Hahn ultimately pleaded guilty and affirmed that she did so because she was, "in fact, guilty of this offense." The court accepted the plea, finding it was supported by a factual basis and entered knowingly, voluntarily, and intelligently.

Hahn's base offense level under the United States Sentencing Guidelines was six. U.S.S.G. § 2B1.1(a)(2). She received a 12-level enhancement because the Presentence Investigation Report determined the amount of loss exceeded $250,000, id. § 2B1.1(b)(1)(G), and a 2-level reduction for acceptance of responsibility, id. § 3E1.1. Based on an offense level of 16 and a criminal history category of I, Hahn's guidelines range was 21 to 27 months imprisonment.

Hahn objected to the amount of loss, which the PSR stated was $394,800.85, and the government responded and attached two exhibits supporting the loss amount. At the sentence hearing, Agent Lindquist testified that the first exhibit was an audit conducted by the VA to determine how much it overpaid Hahn. The first portion of that exhibit showed each payment the VA made to Hahn from September 2001 to February 2016 based on her 100% combined disability rating, and the second portion showed the payment that would have been made based on Hahn's retroactive 90% combined disability rating. The difference between those two sums was $394,800.85. The second exhibit showed the amount of funds wired

to Hahn's account from the Department of Treasury between September 2001 and February 2016. It matched the first portion of the first exhibit.

After Agent Lindquist's testimony, the district court independently calculated the loss amount. The court asked Agent Lindquist a series of questions about how the VA determines disability ratings and makes adjustments for changes in disability. Based on his answers to those questions and the two exhibits, the district court stated that its loss calculation matched the VA's.

Hahn did not dispute the government's math. Instead, she argued that the government could not prove the loss amount by a preponderance of the evidence because her pending appeal before the Board of Veterans Appeals might confer retroactive benefits that offset the loss amount. The district court explained that it could not wait for the outcome of that appeal (which would likely take two or three years), noted that Hahn presented no evidence challenging the government's calculation, and ruled that the government had proven a loss amount of $394,800.85 by a preponderance. The district court sentenced Hahn to nine months imprisonment — well below the bottom end of her guidelines range — and ordered her to pay $394,800.85 in restitution. This is Hahn's appeal.

## II.

Hahn challenges her conviction, contending that the district court failed to comply with Federal Rule of Criminal Procedure 11 by accepting her guilty plea

8

without a sufficient factual basis and without ensuring she understood the nature of the charged offense.  Because Hahn failed to object to the purported Rule 11 violation, we review the issue only for plain error.  United States v. Monroe, 353 F.3d 1346, 1349 (11th Cir. 2003).  Hahn must show that there is (1) error (2) that is plain and (3) that affects substantial rights.  Id.  If she does, then we have discretion to notice that error, but only if "the error seriously affects the fairness, integrity, or public reputation of the judicial proceedings."  Id.

There was no error that was plain in the Rule 11 colloquy.  Rule 11 required the district court to determine that there was a factual basis for Hahn's guilty plea.  Fed. R. Crim. P. 11(b)(3).  The court heard overwhelming evidence supporting Hahn's plea.  Experts in ophthalmology and optometry testified that Hahn's complaints about vision loss contradicted their objective test results, and one went so far as to state that he "was very suspicious that most likely [Hahn's] vision was much better than what she was telling [him]."  Three witnesses testified that Hahn applied for and received four driver's licenses, all of which required her to pass a vision test.  One witness testified that Hahn did not request blindness-related accommodations in graduate school, though she did request a parking permit.  Four witnesses who knew Hahn from work did not believe Hahn was blind and testified that those jobs required sight.  Two witnesses from the VA testified that Hahn stated she could not drive and required a caretaker at all times.  And last but not

9

least, Agent Lindquist testified that he observed and recorded Hahn driving at least sixteen times. That evidence was a sufficient factual basis for Hahn's plea.

Rule 11 also required the court to ensure that Hahn understood the nature of the charged offense. Fed. R. Crim. P. 11(b)(1)(G). We decide on a case-by-case basis whether a district court adequately informed a defendant of the nature of the offense. See United States v. James, 210 F.3d 1342, 1344 (11th Cir. 2000). The elements comprising the charged offense, theft of government property, are: (1) the money belonged to the United States or an agency thereof; (2) the defendant appropriated the money for her own use, and (3) the defendant did so knowingly with the intent to deprive the government of the money. United States v. Wilson, 788 F.3d 1298, 1309 (11th Cir. 2015).

During the plea colloquy, Hahn affirmed that she discussed the elements of the charged offense with her attorney. In addition, Hahn was present when the court explained the indictment to the jury, during opening statements, and throughout the presentation of the evidence, such that she knew the nature of the offense by the time she pleaded guilty. Although the court did not explicitly state each element, its questions during the plea colloquy apprised Hahn of the nature of the offense. During that colloquy, Hahn admitted that she lied about not being able to drive. She affirmed that she knew the VA relied on false information when it gave her a 100% blindness-related disability rating. And she admitted to taking

10

VA benefits despite knowing the VA relied on false information. As a result, the district court ensured that Hahn understood the nature of the offense, and there was no plain error in the plea colloquy.

Alternatively, even if there was plain error, that error did not "seriously affect[ ] the fairness, integrity, or public reputation of the judicial proceedings." Monroe, 353 F.3d at 1349. In keeping with Supreme Court precedent, we have declined to notice an error when the evidence against the defendant was overwhelming. Id. at 1357 (citing United States v. Cotton, 535 U.S. 625, 632, 122 S. Ct. 1781, 1786 (2002); Johnson v. United States, 520 U.S. 461, 469, 117 S. Ct. 1544, 1550 (1997)). As detailed above, the amount of evidence incriminating Hahn was nothing short of overwhelming. As a result, any purported error did not "seriously affect the fairness, integrity, or public reputation of the judicial proceedings." Monroe, 353 F.3d at 1357. On the contrary, "it would be the reversal of a conviction such as this which would have that effect." Johnson, 520 U.S. at 469, 117 S. Ct. at 1550. We decline to disturb Hahn's conviction.

### III.

Hahn also contests the validity of her sentence. She contends that the district court erred by finding that the loss amount exceeded $250,000 and enhancing her sentence on that basis. Because Hahn objected to the loss amount at the sentence hearing, the government had the burden to prove the loss amount by a

11

preponderance. United States v. Washington, 714 F.3d 1358, 1361 (11th Cir. 2013). Although the district court has "considerable leeway" in calculating the loss amount, its calculation must be supported by "reliable and specific evidence." United States v. Campbell, 765 F.3d 1291, 1302 (11th Cir. 2014). We review the district court's finding for clear error and will overturn it only if we are "left with a definite and firm conviction that a mistake has been committed." Id. at 1301.

The government presented "reliable and specific evidence" that proved the loss amount of $394,800.85 by a preponderance of the evidence. The government introduced two exhibits supporting the loss amount: the VA's audit comparing the amount it paid Hahn based on a 100% combined disability rating to how much it would have paid based on a 90% combined disability rating, and a wire transfer statement confirming the amount the VA paid Hahn. The government also introduced testimony by Agent Lindquist, who explained those exhibits and the government's loss calculation. In an abundance of caution, the district court corroborated the loss amount with its own independent calculation.

Hahn offered no evidence to rebut the loss amount. Instead, she argued that depending on the outcome of her administrative appeal, she might be entitled to additional disability benefits, and if those benefits are retroactive, they might offset the loss amount. We cannot predict the outcome of that appeal. And the district court could not forestall sentencing Hahn until the appeal is resolved, which could

take years.  In light of the evidence supporting the loss amount, Hahn's speculation about the outcome of her pending administrative appeal does not leave us "with a definite and firm conviction that a mistake has been committed."  Campbell, 765 F.3d at 1302.  The district court did not clearly err in finding that the loss amount was $394,800.85 and enhancing Hahn's sentence on that basis.

**AFFIRMED.**

13