[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

————————————————

No. 17-14520
Non-Argument Calendar

————————————————

D.C. Docket No. 1:17-cr-20334-FAM-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JUAN VIDEA,
a.k.a. Johnnie,
a.k.a. John,

Defendant-Appellant.

————————————————

Appeal from the United States District Court
for the Southern District of Florida

————————————————

(November 5, 2018)

Before TJOFLAT, MARTIN, and BRANCH, Circuit Judges.

PER CURIAM:

Juan Videa appeals his 132-month sentence, imposed after he pled guilty to conspiracy to possess with intent to distribute cocaine base and dealing in firearms without a license.  He argues his sentence is procedurally unreasonable because the district court made no findings of fact when it overruled his objections to two sentencing enhancements and failed to adequately explain its decision to vary upward from the guideline range when determining Videa's sentence.  He also argues his sentence is substantively unreasonable.

I.

Videa and two co-defendants were indicted in May 2017.  The indictment charged Videa with conspiracy to possess with intent to distribute 28 grams or more of cocaine base and a detectable amount of heroin, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B)(iii) and 846; dealing in firearms without a license, in violation of 18 U.S.C. §§ 922(a)(1)(A), 924(a)(1)(D), and 2; and possessing with intent to distribute a detectable amount of cocaine base, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C) and 18 U.S.C. § 2.

Videa pled guilty to the conspiracy and firearms-dealing counts.[1]  As part of the guilty plea, the parties stipulated to a factual proffer stating that Videa sold guns and drugs to undercover officers several times.  The proffer specified that Videa "personally sold street level quantities of heroin, cocaine and cocaine base"

---

[1] The government dismissed the possession count.

and "personally sold firearms and ammunition" to officers, but did not state the number of guns, the kind of guns, the weight of drugs involved in each sale, how the drugs were packaged, the number of sales, the dates of sales, whether the drugs and guns were sold together or separately, or the number of undercover officers making purchases. The proffer also stated that Videa "began introducing his associates, such as [his codefendants] to complete sales with the law enforcement's undercover agent" and that "[r]ecorded telephone calls and body camera footage captured [Videa and his codefendants] making statements which confirmed that [they] were members of a common plan to sell[] narcotics and firearms." The proffer finally stated that "it was foreseeable to VIDEA that the conspiracy would involve 28 grams of cocaine base, but less than 112 grams."

Before sentencing, a probation officer prepared a presentence investigation report ("PSR"). The PSR calculated Videa's base offense level as 20 under United States Sentencing Guideline § 2K2.1. It applied several offense-level enhancements, including a four-level enhancement under Guideline § 2K2.1(b)(5) for trafficking in firearms as well as a four-level enhancement under Guideline § 2K2.1(b)(6)(B) for possessing a gun in connection with another offense. Videa filed a sentencing memorandum arguing that his "conduct in the instant case does not support" these enhancements.

3

The government responded that § 2K2.1(b)(5)'s application was proper because, in part, "Videa sold a firearm and distribution quantities of narcotics together," and "was thus on notice that his buyers were engaged in armed drug trafficking." The government also claimed it would offer testimony at sentencing to show Videa knew the guns were being purchased "so that the buyer could exact violence against a rival." The government argued that § 2K2.1(b)(6)(B)'s application was proper as well because "[u]nder the circumstances of the gun and drug sales, Videa was on notice that he was selling guns to an illicit drug supplier." The government also anticipated presenting evidence of a wiretapped call between Videa and a codefendant, alleging that the call showed the two discussing a "home invasion or homicide." The government claimed the conspiracy to commit this crime "reasonably is understood to be aided through the use of firearms."

The district court sentenced Videa and his codefendants at the same hearing, but addressed each separately. The court began by asking each defendant whether he had read the PSR. All three answered yes. The district court did not ask whether there were any factual objections to the PSR. The government said it needed to go "[b]eyond the factual proffer" to address Videa's objections. However, the government did not call any witnesses. Also, the government read from a transcript of an intercepted phone call between Videa and a codefendant, but it did not enter the transcript into evidence. The government said the parties

4

did not dispute that Videa personally sold four guns to undercover officers. Videa acknowledged that he sold guns and drugs to the same individuals; that the guns were "high capacity"; and that the drugs were cocaine or heroin. He argued that the drug and gun sales happened "[s]eparate and apart."

The court overruled Videa's objections to the enhancements under Guideline § 2K2.1(b)(5) and (b)(6)(B). It determined Videa's final offense level to be 27, his criminal history category to be II, and the guideline range to be 78 to 97 months. The court sentenced him to 132 months, explaining that the upward variance was warranted "because of [Videa's] initiation role in this trafficking and firearms case involving drugs and the type of firearms, and as the leader, I think that is the appropriate sentence that is necessary to protect the public." Videa objected to the upward variance and to the court's characterization of him as a "leader." The court said, "I think I used the initiator, and as the initiator, the coordinator . . . ." This appeal followed.

## II.

We review the reasonableness of a sentence for abuse of discretion. Gall v. United States, 552 U.S. 38, 51, 128 S. Ct. 586, 597 (2007). We first determine whether the sentence is procedurally unreasonable—that is, whether the district court committed any "significant procedural error, such as . . . improperly calculating[] the Guidelines range, treating the Guidelines as mandatory, [or]

5

failing to consider the [18 U.S.C.] § 3553(a) factors." Id.  Generally, failure to make findings of fact in support of an enhancement is a procedural error that requires resentencing.  See, e.g., United States v. Johnson, 694 F.3d 1192, 1195, 1197 & n.21 (11th Cir. 2012).  However, we will not vacate a sentence "if the record supports the court's determination." United States v. Daniels, 685 F.3d 1237, 1253 (11th Cir. 2012) (per curiam) (quotation omitted and alteration adopted).

"When the government seeks to apply an enhancement under the Sentencing Guidelines over a defendant's factual objection, it has the burden of introducing sufficient and reliable evidence to prove the necessary facts by a preponderance of the evidence." United States v. Washington, 714 F.3d 1358, 1361 (11th Cir. 2013) (quotation omitted).  "[A]bsent a stipulation or agreement between the parties, an attorney's factual assertions at a sentencing hearing do not constitute evidence that a district court can rely on." Id.

Guideline § 2K2.1(b)(5) increases a defendant's offense-level by four points if he engages in firearms trafficking.  It applies if the defendant

  (i) transported, transferred, or otherwise disposed of two or more firearms to another individual, or received two or more firearms with the intent to transport, transfer, or otherwise dispose of firearms to another individual; and

  (ii) knew or had reason to believe that such conduct would result in the transport, transfer, or disposal of a firearm to an individual—

(I) whose possession or receipt of the firearm would be unlawful; or

(II) who intended to use or dispose of the firearm unlawfully.

USSG § 2K2.1 cmt. n.13.

Guideline § 2K2.1(b)(6) also provides for a four-point increase in offense level if the defendant

(A) possessed any firearm or ammunition while leaving or attempting to leave the United States, or possessed or transferred any firearm or ammunition with knowledge, intent, or reason to believe that it would be transported out of the United States; or

(B) used or possessed any firearm or ammunition in connection with another felony offense; or possessed or transferred any firearm or ammunition with knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony offense[.]

Id. § 2K2.1(b)(6). The Guidelines commentary explains that the firearm must have "facilitated, or had the potential of facilitating, another felony offense." Id. § 2K2.1 cmt. n.14(A). If the other felony offense is "a drug trafficking offense in which a firearm is found in close proximity to drugs," the enhancement applies. Id. § 2K2.1 cmt. n.14(B). The commentary defines "another felony offense" as "any federal, state, or local offense, other than the explosive or firearms possession or trafficking offense, punishable by imprisonment for a term exceeding one year, regardless of whether a criminal charge was brought, or a conviction obtained." Id. § 2K2.1 cmt. n.14(C).

7

III.

In resolving this appeal, we begin by noting that we cannot rely on the facts set out in the PSR. The district court never adopted those facts. Nor can we assume those facts based on a lack of objection from Videa since the court did not ask him whether he had any objection to the facts set out in the PSR. The record shows the court understood from the limited details in the factual proffer and the nature of Videa's objections that the parties "don't agree on anything with the facts." In fact, the court repeatedly offered to vacate the guilty pleas so the parties could litigate the facts in front of a jury. As the government also did not call any witnesses at sentencing or offer any exhibits into evidence, the factual record on appeal is limited to those facts in the factual proffer of the parties at the time of Videa's plea, as well as those facts Videa admitted at sentencing. The government argues that these are enough to support both enhancements. We conclude to the contrary.

As to the § 2K2.1(b)(5) enhancement for trafficking in firearms, the parties appear to agree that the dispute is whether Videa "knew or had reason to believe" that he sold guns to one or more individuals "who intended to use or dispose of the firearm unlawfully." The government argues that Videa could have had such a belief because "the type and quantity of firearms and narcotics purchased by the undercover officer" would have shown the buyer was a "drug dealer" who needed

8

the guns "to protect his drug business."  The problem with this argument is that it relies on an assumption that Videa sold all the guns and drugs to a single undercover officer, and this fact is not supported by the record.  The factual proffer says Videa personally sold guns and drugs "to members of the law enforcement investigation."  And Videa never admitted that he sold only to a single agent or that he sold both guns and drugs in the same transaction.  Indeed, Videa's statement that the sales happened "[s]eparate[ly] and apart" would suggest the opposite.

The record shows, at most, that Videa sold two "high capacity" guns and "street level quantities" of cocaine or heroin to the same individual.  But again, the record is silent as to whether more than one gun at a time was sold, whether the guns and drugs were sold together, which sale happened first, how much time passed between sales, or what "street level quantities" means.  Too great a leap is required from this record to say that a particular buyer is not a mere "drug user" but instead a "drug dealer."  This record simply does not support a "reasonable inference" in favor of a sentencing enhancement for firearms trafficking.  This enhancement thus arose from speculation, which we have repeatedly said has no place at sentencing.  See United States v. Chavez, 584 F.3d 1354, 1367 (11th Cir. 2009) (stating a district court can rely on "reasonable inference[s]" but not ones that are "speculative to the point of being clearly erroneous"); see also United

9

States v. Asante, 782 F.3d 639, 645–46 (11th Cir. 2015) (upholding § 2K2.1(b)(5) enhancement when there was evidence of several purchases by a single buyer, resales of guns, use of a straw buyer, or obliteration of serial numbers on guns).[2]

The government alternatively asks that the enhancement be affirmed based on proffers its attorney made at sentencing about what undercover officers said to Videa during the transaction. It argues the proffers can be used because Videa did not object or contradict them. But statements of counsel are not evidence, so to accede to this request of the government's is plainly contrary to law. See Washington, 714 F.3d at 1361. No party can be faulted for failing to object or contradict every statement made by another lawyer when this Court's precedent says those statements are not evidence, in any event. This is particularly true on this record, which reflected from the outset that the parties agreed on very few facts.

As to the § 2K2.1(b)(6)(B) enhancement for using or possessing a firearm in connection with another felony offense, the government argues that Videa's sale of guns to the same individual to whom he was selling drugs, demonstrates Videa

---

[2] The government also argues Videa had reason to know his codefendants were selling guns and drugs to the undercover officers based on his introducing his codefendants to those officers and his admission that they conspired to sell guns and drugs. However, the firearms-trafficking enhancement can be based only on the defendant's own conduct and those acts he aided or abetted, counseled, commanded, induced, procured, or willfully caused. See USSG § 2K2.1 cmt. n.13(B). The record does not include the dates and circumstances of the introductions or the codefendants' gun sales so we have no basis for determining whether the record supports the government's argument. In any event, the district court found that Videa should not be held accountable for the sales of guns by his codefendants.

knew or had reason to believe the buyer was committing felony purchase, felony possession, or felony distribution of narcotics under Florida law. See Fla. Stat. §§ 893.13(2)(a) & 893.13(6)(a). But again, this record does not define "street level quantities," or otherwise state the number of drug sales, the dates of sales, how the drugs were packaged, the number of buyers, or the nature of any discussions between Videa and his buyers. Therefore, there is no record support for an inference that Videa knew he was selling to a buyer who was going to engage in felony distribution of narcotics. See United States v. Carillo-Ayala, 713 F.3d 82, 97–98 (11th Cir. 2013) (determining defendant knew he was selling firearms and drugs to another drug dealer based on "the number and unusual types of firearms and other weapons that [buyer] and [defendant] discussed, the fact that [defendant] was not selling user quantities of drugs to [buyer], and the duration and constant reiteration of [buyer's] interest in both drugs and guns").

If the other felony offense for § 2K2.1(b)(6)(B) is felony purchase or felony possession, the government has the burden of showing Videa used or possessed a gun "in connection with" either of these felonies—meaning that the gun "facilitated, or had the potential of facilitating" the felonies. See USSG § 2K2.1 cmt. n.14(A). While "close proximity" between firearms and drugs is enough to demonstrate facilitation if the felony is "drug trafficking," the same is not necessarily true for felony purchase or possession. See id. § 2K2.1 cmt. n.14(B).

11

In Carillo-Ayala, a defendant sold both guns and drugs to the same buyer. 713 F.3d at 97. However, "no drugs were present" when the firearms were exchanged so "there [was] no reason to think [the defendant] needed to protect drugs or drug proceeds." Id. The record in Carillo-Ayala contained no evidence showing the firearms were exchanged for drugs or drugs for firearms or any discussions of "a connection between the drugs and the firearms." Id. On that record, our Court held that "[d]iscussing or exchanging firearms to 'grease the wheels' for drug sales, by itself and without anything more, does not suffice to show that a defendant possessed firearms 'in connection with' his drug offense." Id. at 98. Similarly, the record in Videa's case offers very little evidence from which we can infer a connection between the gun sales and the drug sales. And while there may be a "reasonabl[e] question" whether Videa used the money from the gun sales to support his drug business, see id., the burden is on the government in this case and there is nothing in the record to support such a possibility.[3]

The district court did not make findings of fact supporting the application of Guideline § 2K2.1(b)(5) and (b)(6)(b) to Videa's conduct. Neither does this record

---

[3] The government argues the § 2K2.1(b)(6)(B) enhancement can be affirmed based on the transcript of an alleged call between Videa and a codefendant. Although the government read from this transcript, it never moved it into evidence and thus Videa never had an opportunity to challenge it. It thus cannot provide a basis for the sentencing enhancement. See Washington, 714 F.3d at 1361; United States v. Giltner, 889 F.2d 1004, 1008 (11th Cir. 1989) (per curiam) ("[D]ue process requires that [defendant] be afforded the opportunity to refute the information brought against him at sentencing.").

otherwise provide a basis for determining that these enhancements apply.  We thus

vacate the sentence and remand for resentencing.[4]  See Daniels, 685 F.3d at 1253.

**VACATED AND REMANDED FOR RESENTENCING.**

---

[4] Because we vacate on these grounds, we need not reach Videa's additional arguments about the upward variance or the substantive reasonableness of his sentence.