[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 20-10460
Non-Argument Calendar
_____

D.C. Docket No. 2:18-cr-00190-SPC-MRM-6

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

WILLIAM THOMAS,
a.k.a. Special,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(October 30, 2020)

Before WILSON, JILL PRYOR and BRASHER, Circuit Judges.

PER CURIAM:

William Thomas appeals his 293-month sentence, imposed after he pled guilty to one count of conspiracy to distribute and possess with intent to distribute cocaine base, heroin, and fentanyl and one count of distribution of cocaine base. Thomas argues that the district court erred in determining the drug quantity for which it held him accountable at sentencing, applying a two-level enhancement for a credible threat of violence, and determining his criminal history score. Thomas also argues that his sentence is substantively unreasonable. After careful review, we affirm the district court's guidelines calculations and Thomas's 293-month sentence.

## I.    BACKGROUND

### A. The Drug-Trafficking Operation

This case arises out of a multi-year investigation into a drug-trafficking operation run by one of Thomas's co-defendants, Tony Wilson, Jr. Wilson, a drug supplier, enlisted dealers to distribute drugs from various homes in North Fort Myers, Florida. For at least 497 days, Thomas was one of Wilson's dealers.

Thomas sold drugs from the "Big House," the organization's main distribution hub. Specifically, Thomas sold 10.43 grams of cocaine base to a confidential informant in exchange for $1,150 and was present when another dealer sold fentanyl and heroin to an informant. Additionally, during Thomas's

involvement in the conspiracy he engaged in a fight with a rival drug dealer outside the Big House while in possession of a firearm.

Law enforcement officers executed multiple search warrants on the Big House, and Thomas was present for two of the searches. During these two searches, officers seized heroin, marijuana, crack cocaine, cocaine base, cash, and firearms. Multiple cooperating witnesses confirmed that Thomas was dealing drugs for Wilson. Multiple cooperating witnesses also reported that during Thomas's involvement, the organization was distributing at least four approximately eight-gram "cookies" of crack cocaine and 200 approximately 0.1-gram bags of heroin and/or fentanyl per day.

## B. Procedural History

A federal grand jury charged Thomas, Wilson, and eight others with various drug-related crimes in a 17-count indictment. Thomas was charged with two counts: conspiracy to distribute and possess with intent to distribute 28 grams or more of cocaine base, 100 grams or more of heroin, and 40 grams or more of fentanyl, in violation of 21 U.S.C. §§ 841(b)(1)(B), 846, and 18 U.S.C. § 2 (Count One), and distribution of cocaine base, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C) (Count Four). He pled guilty to both counts.

Before sentencing, the probation office prepared a presentence investigation report ("PSR"). The PSR grouped both counts per U.S.S.G. § 3D1.2(d) and

3

calculated the total quantity of drugs sold during Thomas's involvement in the conspiracy. The PSR determined that Thomas was a dealer in Wilson's organization for at least 497 days and thus was accountable for 15.904 kilograms of cocaine base and 9.94 kilograms of heroin. Based on this quantity, Thomas's base offense level was 36. *See* U.S.S.G. § 2D1.1(c)(2). The PSR applied a two-level enhancement for possessing a dangerous weapon and another two-level enhancement for using violence, making a credible threat to use violence, or directing the use of violence because during Thomas's involvement in the conspiracy, he engaged in a fight with a rival drug dealer at the Big House while possessing a firearm. *See id.* § 2D1.1(b)(1), (2). Thomas also received a three-level reduction for acceptance of responsibility, yielding a total offense level of 37.

The PSR determined that Thomas had a criminal history score of five, resulting in a criminal history category of III. As relevant to this appeal, the PSR assigned one criminal history point for Thomas's conviction for possession of paraphernalia and one point for his conviction for resisting an officer without violence and marijuana possession. *See id.* § 4A1.1(c). In both cases Thomas pled *nolo contendere* and was fined. Based on his total offense level and criminal history category of III, Thomas's recommended range under the Sentencing Guidelines was 262 to 327 months' imprisonment.

The PSR discussed Thomas's personal background.  Thomas explained that his family struggled financially, and he became involved in the instant offense to support his family.  The PSR also recounted that he had a high school diploma and had attended university for two semesters on a football scholarship.

Thomas raised several objections to the PSR.  First, he objected that the PSR improperly held him responsible for the drug quantity of the entire conspiracy, an amount far greater than his participation involved.  Second, Thomas objected to the enhancement for possessing a firearm in connection with the offense, arguing that there was no evidence he possessed a firearm and that, even if he did, there was no indication it was used in furtherance of the conspiracy.  Third, Thomas objected to the use-of-violence enhancement, arguing there was no evidence he made a threat or committed an act of violence in furtherance of the conspiracy.  Fourth, Thomas objected to his criminal history calculation, asserting that he should not have received points for the two offenses in which he received only fines as punishment.  Thomas also argued that his conviction for resisting an officer without violence should have been excluded because it was similar to "[h]indering or failure to obey a police officer" and "[r]esisting arrest," offenses excluded from the criminal history calculation under U.S.S.G. § 4A1.2(c)(1).

Thomas requested a downward variance pursuant to 18 U.S.C. § 3553(a), arguing that given his personal circumstances, a 60-month sentence was

5

appropriate.  Thomas stated that he had a minimal education and engaged in criminal activity to support his family.  He noted that before this arrest, he had been convicted of only four misdemeanors and had never served a sentence longer than 120 days in jail.  He asserted that he was not violent and did not have a violent history.  Thus, Thomas argued, a variance was warranted in his case.

At sentencing, Thomas did not object to the factual accuracy of the PSR, but he reiterated his objections.  The district court overruled each of Thomas's objections and adopted the PSR's guidelines calculation.

The district court found that Thomas was responsible for the drug quantity calculated in the PSR.  The court stated that it was making a "particularized" finding and that the record and testimony from others involved in the conspiracy indicated that the drug quantity set forth in the PSR was reasonably foreseeable to Thomas.  Doc. 631 at 19.[1]  Thomas withdrew his objection to the firearm enhancement but restated his objection to the use-of-violence enhancement, arguing that applying both enhancements for the same underlying conduct was improper "double-dipping."  *Id.* at 21.  The district court disagreed, concluding that the Guidelines contemplated applying the enhancements cumulatively.  The court concluded that the use-of-violence enhancement was appropriate after noting that Thomas had confronted a rival drug dealer while holding a firearm and that there

---

[1] "Doc." numbers refer to the district court's docket entries.

6

were numerous incidents where Thomas was at the Big House while guns were displayed.

The district court also overruled Thomas's objection to his criminal history score calculation. The court stated that the Guidelines and this Court's precedent indicated criminal history points were warranted for convictions resulting only in a fine. As to Thomas's argument that his conviction for resisting an officer should have been excluded, the court noted that Thomas also pled guilty at that time to possession of marijuana, which is not an excluded offense under the Guidelines.

Thomas renewed his request for a downward variance, this time arguing that a 180-month sentence was appropriate given his personal circumstances and the 18 U.S.C. § 3553(a) factors. The government requested a 327-month sentence, emphasizing Thomas's violent conduct and asserting that Thomas acted as if he were "untouchable"—he continued working for the conspiracy after search warrants were executed on the Big House and after he had opportunities to withdraw. Doc. 631 at 58. The government asserted that Thomas was a danger to the public and a severe punishment was needed to deter similar criminal conduct.

Before imposing a sentence, the district court acknowledged the potential risk for sentencing disparities between codefendants in this case and explained that it had reached a decision after "careful consideration of many factors." *Id.* at 65. The court noted that it had reviewed Thomas's PSR, his codefendants' PSRs, the

advisory guideline range, and the sentencing memoranda.  The court considered the § 3553(a) factors and weighed Thomas's limited criminal history against the serious nature of the offense and the need to provide just punishment, deter similar criminal conduct, and protect the public from Thomas's future crimes.

After weighing the factors, the court imposed a within-guidelines sentence of 293 months' imprisonment with five years of supervised release.  This is Thomas's appeal.

## II.     DISCUSSION

On appeal, Thomas argues that the district court erred in:  (1) determining the drug quantity for which it held him accountable, (2) applying a two-level enhancement for use of violence, (3) determining his criminal history score, and (4) imposing a substantively unreasonable sentence.  We consider these arguments in turn.

### A. Drug Quantity Determination

Thomas argues that the district court erred in applying the PSR's drug quantity calculation—15.904 kilograms of cocaine base and 9.94 kilograms of heroin—because there was no evidence in the record to support those quantities. Thus, he claims, his base offense level of 36 was not supported by sufficient evidence.  We disagree.

We review a district court's determination of the drug quantity attributable to a defendant for clear error.[2] *United States v. Almedina*, 686 F.3d 1312, 1315 (11th Cir. 2012). "A factual finding is clearly erroneous when, upon review of the evidence, we are left with a definite and firm conviction a mistake has been made." *United States v. Dimitrovski*, 782 F.3d 622, 628 (11th Cir. 2015). A factual finding cannot be clearly erroneous when the factfinder is choosing between two permissible views of the evidence. *United States v. Saingerard*, 621 F.3d 1341, 1343 (11th Cir. 2010).

The base offense level for a drug conviction is calculated by determining the quantity of drugs attributable to a defendant. U.S.S.G. § 2D1.1(a)(5); *see United States v. Frazier*, 89 F.3d 1501, 1506 (11th Cir. 1996). When making this determination, a court must consider all relevant conduct, including "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant." U.S.S.G. § 1B1.3(a)(1)(A). Thus, the defendant is accountable for all drug quantities with which he was directly involved and, in the case of a conspiracy, all reasonably foreseeable drug quantities

---

[2] The government argues that we should review Thomas's challenge to the drug quantity attributed to him for plain error because he raises a new legal argument in support of this objection for the first time on appeal. *United States v. Corbett*, 921 F.3d 1032, 1035 (11th Cir. 2019) (reviewing for plain error a new legal argument supporting an objection that was raised in the district court). We need not resolve the question of the proper standard of review, however, because we would affirm the district court's sentencing decision even under the more favorable clear error standard.

that were within the scope of the conspiracy. *Id.* § 1B1.3(a)(1)(B), cmt. n.3. Where there is no drug seizure, or the amount seized does not reflect the scale of the offense, the district court must approximate the drug quantity. *Id*. § 2D1.1, cmt. n.5; *Frazier*, 89 F.3d at 1506. Although the court's approximation may not be merely speculative, it may be based on a "fair, accurate, and conservative estimate[]" of the drug quantity. *United States v. Zapata*, 139 F.3d 1355, 1359 (11th Cir. 1998). For instance, a court may base its approximation on evidence showing the average frequency and quantity of a defendant's drug sales over a given period. *Frazier*, 89 F.3d at 1506.

The district court did not clearly err in holding Thomas accountable for the drug quantity calculated in the PSR. As an initial matter, Thomas did not dispute the PSR's findings regarding the specific drug transactions he was involved in or the conspiracy's daily distribution amounts. Thus, the sentencing court may rely upon these facts even without supporting evidence. *United States v. Beckles*, 565 F.3d 832, 844 (11th Cir. 2009). Here, the court relied on the PSR as well as testimony from others involved in the conspiracy in making a "particularized" determination regarding Thomas's attributable drug quantity. Doc. 631 at 19. The court stated that Thomas was part of the conspiracy for 497 days with at least 17 other individuals; further, he distributed drugs from the Big House where search warrants led to the discovery of large quantities of drugs and firearms. The court

considered testimony regarding the daily quantity of drugs sold from the Big House and noted that a "conservative estimate" was used in determining the amount attributable to Thomas. *Id.* at 20. On this basis, the court found the drug quantity set forth in the PSR was reasonably foreseeable to him. Given the evidence related to the length and extent of Thomas's involvement in the conspiracy, we are not left with a definite and firm conviction that the district court erred in applying the PSR's drug quantity determination and corresponding base offense level.

## B. Use-of-Violence Enhancement

Thomas argues that the district court erred in applying the use-of-violence enhancement where there was no evidence that he made any threats of violence. *See* U.S.S.G. § 2D1.1(b)(2). Further, he contends that although he engaged in a fight during the existence of the conspiracy, this fact does not mean the fight was in furtherance of the conspiracy. We reject his arguments.

In evaluating a district court's imposition of an offense level enhancement, we review the court's findings of fact for clear error and its application of the Sentencing Guidelines *de novo*. *United States v. Rendon*, 354 F.3d 1320, 1329 (11th Cir. 2003). Although clear error review is deferential, "a finding of fact must be supported by substantial evidence." *United States v. Robertson*, 493 F.3d 1322, 1330 (11th Cir. 2007). "When the government seeks to apply an enhancement

11

under the Sentencing Guidelines over a defendant's factual objection, it has the burden of introducing sufficient and reliable evidence to prove the necessary facts by a preponderance of the evidence." *United States v. Washington*, 714 F.3d 1358, 1361 (11th Cir. 2013) (internal quotation marks omitted).

The Guidelines provide that a two-level enhancement applies "[i]f the defendant used violence, made a credible threat to use violence, or directed the use of violence." U.S.S.G. § 2D1.1(b)(2). If the defendant "merely possessed a dangerous weapon but did not use violence, make a credible threat to use violence, or direct the use of violence," then the two-level enhancement does not apply. *Id.* § 2D1.1, cmt. n.11(B).

Here, the government introduced "sufficient and reliable evidence" to support the § 2D1.1(b)(2) enhancement. *Washington*, 714 F.3d at 1361. At sentencing, the government established that Thomas and others engaged in an altercation with a rival drug dealer, Donald Wynn, outside the Big House. During the altercation, Thomas was carrying what appeared to be "an AR platform rifle." Doc. 631 at 39. Thomas did not, and does not, dispute that he confronted Wynn while carrying a firearm. Although there is no evidence that Thomas used violence or directed others to use violence, as the district court noted, this "show of force" was sufficient to establish a credible threat to use violence by a preponderance of the evidence. *Id.* at 43; *see* U.S.S.G § 2D1.1(b)(2); *Washington*, 714 F.3d at 1361.

12

We therefore conclude the court did not clearly err in enhancing Thomas's base offense level under U.S.S.G. § 2D1.1(b)(2).

## C. Criminal History Score

Thomas argues that the district court improperly assigned him criminal history points for two prior convictions in which he was only fined, not sentenced to a term of imprisonment or probation.[3]  He also asserts that his conviction for resisting an officer without violence should be excluded because it is similar to "[h]indering or failure to obey a police officer" and "[r]esisting arrest," offenses excluded from the criminal history calculation under U.S.S.G. § 4A1.2(c)(1). Again, we disagree.

We review *de novo* a district court's interpretation and application of the Guidelines.  *Rendon*, 354 F.3d at 1329.  The Guidelines assign three criminal history points for a defendant's prior sentences of imprisonment exceeding one year and one month, two points for prior sentences of imprisonment between 60

---

[3] The government notes that to the extent Thomas challenges the district court's denial of a downward departure from his criminal history category, this Court lacks jurisdiction to consider his challenge.  A district court may depart downward from the defendant's criminal history category if "reliable information indicates that [it] substantially over-represents the seriousness of the defendant's criminal history." U.S.S.G. § 4A1.3(b)(1).  We lack jurisdiction to review the court's decision not to apply a downward departure under § 4A1.3(b)(1). *See United States v. Winingear*, 422 F.3d 1241, 1245–46 (11th Cir. 2005).  But we read Thomas's brief as contesting the court's *calculation* of his score, not the court's discretionary decision not to depart from his criminal history category.  Indeed, Thomas argues that the district court improperly "comput[ed]" his criminal history score and does not cite § 4A1.3(b)(1).  Appellant's Br. at 16.

days and one year and one month, and one point for each prior sentence not counted in either of those instances. U.S.S.G. § 4A1.1(a)–(c). A "prior sentence" means "any sentence previously imposed upon adjudication of guilt, whether by guilty plea, trial, or plea of *nolo contendere*." *Id.* § 4A1.2(a)(1). Prior sentences warranting one criminal history point under § 4A1.1(c) include sentences of less than 60 days, probation, fines, and residency in a halfway house. *Id.* § 4A1.1, cmt. Background. Unless explicitly excluded, sentences for felonies, misdemeanors, and petty offenses are included in the criminal history score calculation. *Id.* § 4A1.2(c).

The district court properly calculated Thomas's criminal history score. We have held that a prior conviction resulting in only a monetary penalty counts as a prior sentence under § 4A1.1(c). *See United States v. Acuna-Reyna*, 677 F.3d 1282, 1285–86 (11th Cir. 2012) (affirming the assessment of one point for defendant's conviction resulting in a fine). Thus, as the court stated, Thomas's argument is foreclosed by our precedent. Further, neither of Thomas's challenged convictions is excluded from the criminal history score calculation. *See* U.S.S.G. § 4A1.2(c)(1). Although Thomas's conviction for resisting an officer without violence does not count toward the score, he pled guilty to possession of marijuana in the same conviction, which does. *See id.* Therefore, the district court did not err in assessing Thomas criminal history points for his two contested convictions.

14

## D. Reasonableness of the Sentence

Finally, Thomas challenges the substantive reasonableness of his sentence. We review the substantive reasonableness of a sentence under a deferential abuse of discretion standard. *Gall v. United States*, 552 U.S. 38, 51 (2007). "A district court abuses its discretion when it (1) fails to afford consideration to relevant factors that were due significant weight, (2) gives significant weight to an improper or irrelevant factor, or (3) commits a clear error of judgment in considering the proper factors." *United States v. Irey*, 612 F.3d 1160, 1189 (11th Cir. 2010) (en banc) (internal quotation marks omitted). The party challenging the sentence bears the burden of showing it is unreasonable. *See United States v. Tome*, 611 F.3d. 1371, 1378 (11th Cir. 2010).

When reviewing a sentence for substantive reasonableness, we examine the totality of the circumstances, including "whether the statutory factors in § 3553(a) support the sentence in question."[4] *United States v. Gonzalez*, 550 F.3d 1319, 1324 (11th Cir. 2008). We will not "second guess the weight (or lack thereof) that

---

[4] Under § 3553(a), the district court is required to impose a sentence "sufficient, but not greater than necessary, to comply with the purposes" of the statute. These purposes include the need to: reflect the seriousness of the offense; promote respect for the law; provide just punishment; deter criminal conduct; protect the public from the defendant's future criminal conduct; and effectively provide the defendant with educational or vocational training, medical care, or other correctional treatment. 18 U.S.C. § 3553(a)(2). The court must also consider the nature and circumstances of the offense, the history and characteristics of the defendant, the kinds of sentences available, the applicable guidelines range, the pertinent policy statements of the Sentencing Commission, the need to avoid unwarranted sentencing disparities, and the need to provide restitution to victims. *Id.* § 3553(a)(1), (3)–(7).

15

[a district court] accorded to a given factor . . . as long as the sentence ultimately imposed is reasonable in light of *all* the circumstances presented." *United States v. Snipes*, 611 F.3d 855, 872 (11th Cir. 2010) (internal quotation marks omitted). We may vacate a sentence only if we firmly believe that the district court "committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case." *Irey*, 612 F.3d at 1190 (internal quotation marks omitted). "Although we do not automatically presume a sentence within the guidelines range is reasonable, we ordinarily expect a sentence within the [g]uidelines range to be reasonable." *United States v. Hunt*, 526 F.3d 739, 746 (11th Cir. 2008) (alteration adopted) (internal quotation marks omitted). A sentence well below the statutory maximum penalty is another indicator of reasonableness. *See Gonzalez*, 550 F.3d at 1324 (holding that the sentence was reasonable in part because it was well below the statutory maximum).

Thomas argues that the district court's sentence was "unwarranted and draconian" given his limited, non-violent criminal history and because he engaged in the conspiracy to further his drug addiction and support his family. Appellant's Br. at 19. The court explicitly considered the 18 U.S.C. § 3553(a) factors, including Thomas's minimal criminal history, before reaching its sentencing decision. The court acknowledged that Thomas had been convicted of only

16

misdemeanors but ultimately it gave more weight to other factors, including the serious nature of the offense; the impact of the conspiracy on the community; and the need to promote respect for the law, to provide just punishment for Thomas's offense, to deter similar conduct, and to protect the public from Thomas's future criminal conduct. The district court's decision to give greater weight to these aggravating factors was not an abuse of discretion. *See United States v. Clay*, 483 F.3d 739, 743 (11th Cir. 2007) ("The weight to be accorded any given § 3553(a) factor is a matter committed to the sound discretion of the district court." (internal quotation marks omitted)). And Thomas's sentence was within the guidelines range and well below the 480-month statutory maximum, *see* 21 U.S.C. § 841(b)(1)(B), which supports a finding of reasonableness, *see Gonzalez*, 550 F.3d at 1324.

We cannot conclude from this record that the district court abused its discretion in imposing a 293-month sentence, as the sentence was within the range of reasonable sentences in light of Thomas's personal circumstances and the serious nature of his offense.

## III. CONCLUSION

For these reasons, we affirm Thomas's sentence.

**AFFIRMED.**

17